SAMUEL H. BOWMAN v. BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX.

Argued June 21, 1905—Decided November 19, 1906.

1. The powers conferred upon the Essex public road board by the statute of March 31st, 1869, which created that body, became vested in and exercisable by the board of chosen freeholders of Essex county, by force of the act of February 10th, 1881, and the subsequent act of April 24th, 1894.

2. A decision upon a point of law, which has been made upon solemn argument and after mature deliberation, ought not to be disturbed by the court in which it was promulgated, except for very urgent reasons and upon a clear manifestation of error.

On error to the Supreme Court.

For the plaintiff in error, *Robert H. McCarter*, attorney-general.

For the defendant in error, *Joseph L. Munn*.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.   This writ of error brings up a judgment of the Supreme Court dismissing a *certiorari* which was sued out to review the legality of an assessment imposed by the board of freeholders of Essex county upon lands of Bowman, for benefits resulting from the widening of Bloomfield avenue, upon which the lands abut.

The work of widening the avenue and the laying of the assessment were done by the board in the exercise of powers which were originally conferred by the legislature upon the Essex public road board by the act of March 31st, 1869 (*Pamph. L., p.* 957), which created that body.

The question presented by this writ for determination is whether subsequent legislation, by which the powers, rights and duties originally vested in the Essex public road board were transferred to the board of chosen freeholders of the county, is valid.

The argument presented on behalf of the prosecutor rests upon the assumption that this transference was accomplished by force of the act of April 24th, 1894, entitled "An act to abolish public road boards in counties of this state and to transfer to and vest in the boards of chosen freeholders in and for the counties in which such public road boards may now exist all the powers, rights and property now vested in and belonging to such public road boards" (*Gen. Stat., p.* 2864), and that the act is unconstitutional.    That statute provides that from and after the first Tuesday of May, 1894, the board of chosen freeholders in and for any county in this state in which any county public road board having charge of public roads may now exist shall be vested with, possess and be subject to all the powers, rights, authority and duties

which are now by law vested in or imposed upon such public road board; and that all county public road boards having charge of public roads shall, on that day, be and they are hereby declared to be abolished, and all powers vested in them, and all property, books, papers, rights, leases, titles and assessment liens, belonging to or vested in such boards, shall be transferred to and vested in and become the property of the board of chosen freeholders in and for the county in which any such public road board then existed.

The Essex public road board was *sui generis* clothed with powers the like of which were not conferred upon any other road board of the state, and counsel insists that by transferring those powers to the board of freeholders of Essex county the legislature has differentiated that board from every other board of freeholders in the state; that the statute is, to this extent, special in its operation, and therefore obnoxious to that provision of the constitution which inhibits the passing of special laws regulating the internal affairs of counties.

If the effect of this statute had been to transfer the powers of the Essex public road board to the county board of freeholders, as the prosecutor contends, and as appears to have been its purpose, and this court was now called upon for the first time to determine the constitutionality of such legislation, it may be conceded that the question presented would be one of doubt and difficulty. But this is not the situation; for, at the time of the passage of the act of 1894, the transfer of those powers had already been accomplished (so far as the legislature had authority to make it) by an act passed February 10th, 1881, entitled "An act to reduce the expenses of public road boards and to place them under the control of the boards of chosen freeholders of the several counties of this state." *Gen. Stat., p.* 2862. The body of this prior act declared that the commissioners constituting the county road boards which then existed, or should thereafter exist, in any of the counties of the state, should consist of members of the boards of freeholders of the several counties, to be appointed in the same manner as the standing committees of such

boards. The reasons for which, it is asserted, the act of 1894 is unconstitutional are, of course, equally applicable to the law of 1881. But the question of the constitutionality of the earlier statute, and its applicability to the county of Essex, has already been twice considered and determined by this court. *Poinier* v. *Schmidt,* 15 *Vroom* 433; *Road Commissioners* v. *Harrington Township,* 26 *Id.* 327. The first of these cases was decided in 1882. The question for determination was whether Schmidt, who was elected in the manner provided by the Road Board act, or Poinier, who was a member of the board of freeholders and was appointed by that body, was entitled to the office of commissioner of the Essex public road board. The decision was in favor of Poinier, and the constitutionality of the act of 1881, upon which Poinier's title rested, was expressly upheld. In the later case both the constitutionality of the act of 1881 and its scope were directly and necessarily involved in the decision, and in the following way : A supplement to the General Road law, passed in 1891, placed the roads of the several townships of the state under the management and control of the respective township committees. By a proviso contained in the last section of that supplement it was declared that nothing contained in the act should be construed to repeal or in anywise affect the act constituting the Essex public road board, or any act which had been or might thereafter be passed to enable boards of chosen freeholders to acquire, maintain and improve public roads. The mooted question in the case was whether the exception from the operation of the act of roads, which by the act creating the Essex public road board had been placed under the control of that body, rendered the act special, and therefore unconstitutional. The court considered that this would have been the effect of the proviso but for the fact that the act creating that body had been materially changed by the act of February 10th, 1881, and expressed the opinion that by virtue of this latter statute "the powers granted to the Essex public road board are to be exercised by the board of chosen freeholders of the county, and they are thus brought into the class in which the board of chosen freeholders in

every county controls the county roads which are laid out for the purpose of improving the county as a whole." Holding this opinion as to the effect of the act of 1881 upon the Essex Road Board act, the court concluded that the proviso of the supplement to the General Road law, which excepted from its operation the whole class of county roads controlled and maintained by boards of freeholders, did not render the supplement special, and therefore unconstitutional; in other words, that a statute which placed township roads under the control of township officers, and permitted county roads to remain under the control of boards of freeholders, properly classified the subject-matter of the legislation, and was therefore a general law.

This court having twice determined that the act of 1881 was a general, not a special, law, notwithstanding that its effect was to vest in the board of freeholders of Essex county the special powers which were conferred upon the Essex public road ·board by the act of 1869, that determination should be adhered to, unless it is palpably wrong. "When a decision upon a point of law has been made upon solemn argument and upon mature deliberation, the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions by it. When a rule has once been deliberately adopted and declared, it ought never to be disturbed by the same court, except for very urgent reasons and upon a clear manifestation of error." 1 *Kent Com.* 475. Most of the present members of this court have been appointed since the promulgation of ·the two decisions referred to, and, perhaps, if the question presented by this writ of error was one of novel impression a different conclusion might be reached. But this fact affords no ground for our refusal to accept and enforce the rule which our predecessors have established. As has already been said, nothing short of an absolute conviction of its unsoundness would justify such action on our part. If the decision of a court of last resort is to be overturned by that body whenever its accuracy may be thought by the judges to be questionable, it is difficult to divine (in the language of the late Chief Justice Beasley, in

*Graves* v. *State,* 16 *Vroom* 208) upon what stable basis the administration of the law is to be conducted.

The decisions in Poinier *v.* Schmidt and Road Commissioners *v.* Harrington Township must be accepted as finally determining the constitutionality of a law, general in its terms, by force of which the powers originally vested in the Essex public road board are transferred to the board of freeholders of that county. This being so, the judgment of the Supreme Court must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, GARRETSON, SWAYZE, BOGERT, VREDENBURGH, GRAY.  9.

*For reversal*—PITNEY, REED, VROOM, GREEN.  4.