# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

### ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

**JUNE TERM, 1914.**

---

JOHN A. McFADDEN, guardian, &c., appellant,

*v.*

FLORENCE E. PALMER et ux. et al., respondents.

[Argued June 18th, 1914. Decided November 16th, 1914.]

The guardian of an infant loaned $3,500 of moneys belonging to his ward, and received from the borrower a bond and mortgage as security for its repayment, with lawful interest. From the amount of the loan, however, and with the consent of the borrower, he retained $275 for his "services in securing the loan," and appropriated this sum to his personal use.—*Held*, that the retention of these moneys by him constituted usury; *held, further*, that such usury could be set up as a defence in a suit for the foreclosure of the mortgage.

On appeal from a decree of the court of chancery advised by Advisory Master William J. Magie.

*Mr. John A. McFadden, pro se,* and *Mr. Halsey M. Barrett,* for the appellant.

*Mr. Sidney W. Eldridge* and *Mr. Samuel Koestler,* for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The bill in this case was filed to foreclose a mortgage for $3,500 given by the defendants Florence E. Palmer and Niblo A., her husband, to the complainant as guardian of Marie E. McFadden, an infant. The answer of the defendants sets up usury in the mortgage to the extent of $275. The decree appealed from adjudges the mortgage usurious to this extent.

It appears from the undisputed proofs in the case that the defendants Mrs. Palmer and her husband applied to the complainant, who is an attorney-at-law as well as the guardian of Marie E. McFadden, to secure a loan of $3,500 for them upon a house and lot in the city of Elizabeth; that the complainant, after having seen the property, promised to make the loan out of funds in his hands as guardian of his infant ward, provided the defendants would pay him $275 for his services in securing the loan and his expenses in connection therewith, and thereupon took from them the following agreement, in writing:

"ELIZABETH, N. J., March 6, 1911.

"For services in securing a loan of $3,500 to be secured by bond and first mortgage for one year with interest at five per cent., covering premises No. 841-843½ Madison avenue, southeast corner of Madison avenue and Fanny street, Elizabeth, N. J., we agree to pay to John A. McFadden $275 besides actual expenses. (Signed) Florence E. Palmer, Niblo A. Palmer;"

that five days later he received from them the mortgage in suit, securing the payment of a bond for $3,500; that out of the moneys agreed to be loaned he paid certain prior encumbrances, retained a sum sufficient to pay the expenses which he had in-

curred in connection with the making of the loan (search fees, fees for cancellation of mortgages, &c.), deducted $275 for his services, and paid over the balance to Mrs. Palmer.

It is the retention of this $275 which it is claimed constitutes usury.

In the case of *O'Neill* v. *Cleveland, 30 N. J. Eq. 273*, the defendants made to the executors of one Joseph Cleveland, deceased, a bond and mortgage to secure the payment of $2,225. It appeared that the executor, who had acted for the estate in making the loan, took an agreement from the defendants by the terms of which he was to receive a bonus of fourteen per cent. upon the amount loaned by the estate, and that this bonus was paid to him out of the moneys so loaned. Upon the foreclosure of the mortgage the defendants claimed that the acceptance of this fourteen per cent. bonus constituted usury. It was urged against the contention that the receipt of the bonus by the executor did not constitute usury, because it was paid to him, not in his official capacity as the representative of the estate of the decedent, but as a private individual, for his own personal use and benefit, for commissions due him in securing the loan; the argument being that there could be no usury which could affect the estate, unless he was acting for the estate when he took the bonus. This court held that the transaction was usurious; declaring that it could make no difference that the lender in the first place paid over the full amount to the borrower, and then received back, by another title or description, the agreed bonus. Counsel for the appellant attempts to distinguish the cited case by pointing out that what the executor received was a bonus, pure and simple, and not a payment for services rendered, while in the case now before us the $275 was retained, as he says, for the services of the complainant as attorney "in procuring the loan, making an abstract of the title of the property, paying off encumbrances and other work incidental thereto." But this attempt overlooks the written agreement of the parties, which declares that the payment of $275 shall be made, not, in part, for making an abstract of title of the premises to be mortgaged, or for services in paying off prior encumbrances, and the like, but for the single service therein specified, viz., "securing a loan of $3,500" for

Mrs. Palmer and her husband; and it is this written contract which determines the consideration for the payment of this money. We do not doubt that Mr. McFadden could have made an agreement with the Palmers for compensation for such services as those specified by counsel which would have been free from any taint of usury; but that is not what he did. He took from them an agreement to pay him this money for securing them a loan from the estate of his ward, an estate of which he was the trustee; in other words, he took a bonus to himself personally for making a loan as the representative of an estate of which he had the custody. This is exactly what was done by the executor in the cited case, and if we follow it we must declare the transaction usurious.

It is said that the rule laid down in *O'Neill* v. *Cleveland* is unreasonably harsh, in that it makes innocent *cestuis que trustent* suffer loss for the unlawful act of their trustees; and that it ought to be repudiated by us. But it does not follow that the application of the rule entails loss upon the *cestui que trust*, for if the trustee has unlawfully wasted the estate which has come into his hands, he must answer for the loss out of his own funds. Even if the fact was otherwise, however, we should be unwilling to overrule the earlier decision because we were not in entire accord with the policy which it lays down. As was said by us in *Bowman* v. *Freeholders of Essex, 73 N. J. Law 543*, a decision upon a point of law which has been made upon solemn argument, and after mature deliberation, ought not to be disturbed by the court in which it was promulgated except for very urgent reasons and upon a clear manifestation of error. It can hardly be contended that we are now confronted with such a situation.

The decree of the court of chancery establishing the usurious character of the transaction under review will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, HEPPENHEIMER—9.

*For reversal*—BLACK, VREDENBURGH, WILLIAMS—3.