This is a suit to determine whether Edith Nielson, a child of Christian Nielson, adopted under the laws of the State of New York, can inherit land in the State of New Jersey. Two questions are propounded by counsel — first, assuming the regularity of the adoption in New York, can this child inherit? second, if she can, are the proceedings regular under the New York statutes?
First. Can a child adopted in New York inherit land in New Jersey?
It has been suggested that under the so-called full faith and credit clause of the United States constitution (section 1, article 4) the courts of the state are bound to give effect to adoption proceedings of another state. This, however, has been definitely settled by the supreme court of the United States inHood v. McGehee (1914), 237 U.S. 611. It was in this case held that they are not required so to do. This case followedOlmstead v. Olmstead (1909), 216 U.S. 386. Here it was held that the full faith and credit clause does not require the courts of one state to give effect to a statute of another state legitimatizing children born out of wedlock. In the Hood Case
the court rested its decision on the ground that the Alabama statute of descents, as construed by the supreme court of that state, excluded children adopted by proceedings in other states. The court says, and this is significant: "Alabama is the sole mistress of the devolution of Alabama land by descent."
The next question that arises is how far the public policy of this state will recognize as a matter of comity a foreign adoption in determining on whom its own law of descent devolves the title of lands within its boundaries. It should be noted that this question is one of novel impression in New Jersey. I have been unable to find any case directly in point in our reports, although in the case of Dayton v. Adkisson, 45 N.J. Eq. 603,
this court dealt with a somewhat similar situation involving the right of a child rendered legitimate in Pennsylvania to inherit land in New Jersey. It was there decided that such child could inherit. *Page 137 
This decision was rendered long before the United States supreme court cases cited above — that is, in 1889 — and never has been reviewed by our court of errors and appeals. "Comity between nations and states is not the right of one state to have its statutes and judicial decisions followed in another state, but a courtesy, as it were, extended by one state to another in the construction of statutes and decisions of a foreign state if not in contravention of its own statutes and decisions." Corp. Jur.1235, and cases cited.
An examination of the cases in other states reveals a decided conflict of authority as to how far courts shall go in the enforcement of this doctrine of comity. On this question see notes contained in Lawyers' Reports Annotated to Irving v.Ford, 65 L.R.A. 177; to Brown v. Finley, 21 L.R.A. (N.S.)679, and to Anderson v. French (1916A.), L.R.A. 666.
The cases of Ross v. Ross (cited in Dayton v. Adkisson,supra) and Miller v. Miller, 91 N.Y. 315, rest squarely upon the application of the rule of comity. There is, however, another line of cases holding that only the law of the situs governs in matters of the descent of land. These cases all follow the principal laid down in Doe d. Birtwhistle v. Vardill, 2 Cl. Fin. 571, 600; 5 Eng. Rul. Cas. (H.L., 1840) 748. A careful examination of these cases, both pro and con, indicates that the application of the doctrine of comity in each instance was largely governed by an analysis of the law of descent prevailing in the state where the opinion was rendered.
As our law of descent is so clearly an outgrowth of the English common law, a consideration of the Birtwhistle Case is important. It was there held that a child born in Scotland, of parents domiciled there, who at the time of his birth were not married, but who afterwards intermarried in Scotland (there being no lawful impediment to their marriage either at the time of the birth or afterwards), although legitimate by the law of Scotland, is not by such marriage rendered capable of inheriting lands in England. The reason for the decision is given by Lord Chief-Justice Tindal as the unanimous opinion of the judges in whose presence the *Page 138 
case was argued before the lords (who adopted it as their own), as follows: "My lords, the grounds and foundation upon which our opinion rests are briefly these: That we held it to be a rule or maxim of the law of England, with respect to the descent of land in England from father to son, that the son must be born after actual marriage between his father and mother; that this is a rule jurispositivi, as are all the laws which regulate succession to real property, this particular rule having been framed for the purpose of excluding, in the descent of land in England, the application of the rule of the civil and canon law, by which the subsequent marriage between the father and mother was held to make the son born before marriage legitimate; and that this rule of descent being a rule of positive law annexedto the land itself, cannot be allowed to be broken in upon or disturbed by the law of the country where the claimant was born, and which may be allowed to govern his personal status as to legitimacy, upon the supposed ground of the comity of nations." The opinion goes on to apply the rule in the so-called "statute of Merton," 20 Hen. III. ch. 9 (anno 1235), which is much discussed in the leading American cases on the subject. It should be noticed that this so-called "statute" was not a statute at all, but an entry on the minutes of parliament of the refusal by the English lords to comply with the prayer of the bishops that the rule of descent of lands in England be assimilated to the rule of the canon law above referred to, and "to change the laws of the realm, which hitherto had been used and approved." It was therefore a legislative affirmation of the common law rule that the heir must be one born in lawful wedlock. It thus appears that the rule of the statute of Merton has always been and is an inherent part of the English common law of descents.
Let us then turn to the consideration of our own law of descent. 2 Comp. Stat. 1917. It should be observed that it does not begin to regulate descent until the intestate leaves "two or more lawful children." The first section was undoubtedly enacted to do away with the English rule of primogeniture. Thus, it differs from the Descent act of Massachusetts *Page 139 
discussed in Ross v. Ross, supra, which on examination is seen to be all-embracing. It is quite clear, then, that at the present day that which casts upon the only child of an intestate title to his lands in this state is not our statute of descent, but the common law of England as incorporated into our legal system. This leads to the inevitable conclusion that what is in force here is the common law of descents (with all of its incidents including that rule of the statute of Merton, which prescribes that the heir must be born in lawful wedlock) except so far as that law has been modified by statute.
In 1877 a statute was enacted in our state providing for the adoption, custody and maintenance of minors, giving them rights of inheritance. Revision, P.L. 1902 p. 259. It is clear that this statute gives rights of inheritance only to children adopted under its provisions. That its effect is so limited appears to have been the opinion of Vice-Chancellor Howell, who said, inStout v. Cook (1910), 77 N.J. Eq. 153 (a case involving the construction of a will): "Section 4 of the act of 1877 provides that a child [so adopted] shall be invested with every legal right * * * in respect to * * * the rights of inheritance to real estate * * * on the death of such adopting parent or parents as if born to them in lawful wedlock." His decree on that branch of the case which involved this expression of opinion was affirmed by the court of errors and appeals in 79 N.J. Eq. 640.
The case of In re Book, 90 N.J. Eq. 549, contains a consideration by the highest court of the effect of the statute and an illuminating discussion by the chief-justice of the whole law of descent. In referring to the state of the law in 1824 he said: "At that time a testator could have no lawful children except those born to him in wedlock. A child born to him of a woman who was not his wife was not recognized by the law as having any claim to share in the real or personal estate of the father. At that time, too, the laws of this state recognized no power existing in any of its citizens to adopt a child of other parents, or by the act of adoption vest in it the right to share in the distribution of the estate of the *Page 140 
adopting parent. In other words, the illegitimate child and the adopted child were neither of them recognized by our law as a lawful child of the actual or the adopting parent.
"The act of 1902, providing for the adoption of minors, was a revision of a statute originally enacted March 9th, 1877. P.L.1877 p. 123. It materially changed the then existing law regulating the devolution of the estates of decedents. By its fourth section [which has remained unchanged by subsequent revision or amendment] it provided that the effect of the decree of adoption should divest the natural parents * * *, and that the child should be invested with * * * the rights of inheritance * * *."
That it was the chief-justice's opinion that our law of descent was modified only to the extent of letting in children adopted under a decree of a New Jersey court and by virtue of the New Jersey statute appears not only from the foregoing language but also from the following (at p. 552): "The act concerning wills, the statute of descents and the statute of distribution, composed the entire legislative system regulating the transmission of the estates of decedents, testate or intestate, prior to the passage of the act for the adoption of minor children. By the enactment of this latter statute, that system, as we have just said, was, to some extent, changed. To determine the purpose of the legislature in making that change and the extent thereof, all of these statutes must be read together * * *."
It will be observed from the foregoing opinion that the rule of the common law that the heir must be born in lawful wedlock is recognized as a fundamental part of the law of descent, and that effect is given to statutory modifications of the rule only within the precise limits of the modifying statutes.
This strict rule of statutory construction was expressed by Mr. Justice Minturn, speaking for the court of errors and appeals, inDorsett v. Vought (1916), 89 N.J. Law 303. He said (atp. 305): "The effect of these adjudications [certain cases in other states applying the general rule] is to determine that the right of a child by adoption to inherit is entirely of statutory creation; that the right being in derogation of the *Page 141 
common law must be strictly construed, and will be denied unless the act of adoption shall have been consummated in strict accordance with the statute."
My opinion is that our statute of descent precludes inheritance by any except children born in wedlock, and that the modification by statute permitting adopted children to inherit applies only to children adopted under the provisions of the New Jersey statute. The doctrine of comity should not, in this class of cases, be applied, because to extend this courtesy to the adoptive acts of other states would be in contravention of our own statute of descent. In other words, quoting from the United States supreme court in Hood v. McGehee, supra, "Alabama [in the instant case, New Jersey] is the sole mistress of the devolution of Alabama [New Jersey] land by descent."
Having arrived at this decision, it is unnecessary to consider the second question raised, viz., the regularity of the New York adoption proceedings.
I will advise a decree in conformity with these conclusions.