While Charles Finkenzeller and Annie Mathilda, his wife, were domiciled in this state, they petitioned the surrogate's court of the county and State of New York for the adoption of an infant girl then in the care and custody of a charitable institution located in New York county, and in their petition, signed and sworn to by both husband and wife, they prayed for an order allowing the adoption and directing that said infant be thereafter regarded and treated in all respects as their own child and be known by their surname. At the same time they entered into a written agreement with the charitable institution agreeing (among other things) to adopt and treat said infant as their own lawful child. A decree was made by said court, dated May 4th, 1920, ordering that said agreement of adoption be in all respects allowed and confirmed and ordering that said infant be thereafter regarded and treated in all respects as the child of the adoptive parents and be known by their surname. The adoptive *Page 45 
parents and the child thereafter resided together in this state and while domiciled here Mrs. Finkenzeller died March 12th, 1926, leaving her husband and said child surviving her. Mr. and Mrs. Finkenzeller had a child of their marriage who predeceased Mrs. Finkenzeller, and at Mrs. Finkenzeller's death she had surviving her no child of her body, or any legal representative of her deceased child. Mrs. Finkenzeller left real and personal property and a will admitted to probate by the surrogate of Essex county, whereon letters of administration with the will annexed were granted to Charles Finkenzeller, the husband. The distributive provisions intended to be made by the testatrix were not contained in the will but were written on sheets of paper separate from the will, which sheets of paper were denied probate, so that the will as admitted to probate contained no provision for the disposition of the testatrix' personal estate and the same will go to her next of kin under our statute of distribution. Upon the administrator's failure to file an inventory of the personal estate of the deceased, he was, on petition of the adopted daughter, ordered by the orphans court to do so, and from said order he now appeals. The claim made in his behalf is that the decree of adoption of the New York court will not be recognized to affect the distribution of the testatrix' personal estate under the laws of this state; that our statute of distribution giving the right of inheritance to a child from his parent, applies to a child of the body and to a child adopted under the statutes of this state only and to extend this right to a child adopted under the laws of another state, would be in contravention of our statute of distribution, and that since the testatrix died without issue, the administrator, as surviving husband, is entitled to all of his deceased wife's personal estate (Cum. Supp. p. 2628 § 146, 169 sub. 2) and cannot be required to file an inventory.
Comp. Stat: p. 3855 § 120 makes it unnecessary for an administrator with the will annexed, who is entitled to all the personal estate of the testator, to file an inventory unless the orphans court, upon the application of "any person interested in the estate" shall order him to do so. It is necessary *Page 46 
therefore to determine whether the adopted daughter is a person interested in the estate. In re Folwell, 67 N.J. Eq. 570;affirmed on this point, 68 N.J. Eq. 728.
The weight of authority in this country is that a child adopted in a foreign state or country may take under local statutes of descent and distribution, if such foreign state or country had jurisdiction to fix his status with respect to his adoptive parents, and if the law with regard to adoption, of the state in which the real and personal property is situated, does not differ essentially from the laws of the state in which the adoption was had, so that local public policy is not violated by recognizing and giving effect to the adoption proceedings of the foreign state or country. 65 L.R.A. 187; 14 L.R.A. (new series) 980;L.R.A. 1916 A, 666 and cases cited. New York courts recognize and apply this doctrine under the comity between states. NewYork Life, c., v. Viele, 161 N.Y. 11; Matter of Leask,197 N.Y. 193.
A child adopted under the Adoption act of this state (Comp.Stat. p. 2807 §§ 13 et seq.; Cum. Supp. p. 1555 §§ 97, 16) occupies the same position as a natural born child of the adoptive parents, so far as concerns the right to take by inheritance from such parents. In re Book, 90 N.J. Eq. 549. The New York Adoption act (Domestic Relations Law, 2 Birdseye (2ded.) 1937 §§ 110 et seq.) is quite similar to our statute. It confers jurisdiction upon the surrogate of the county in which the infant resides, when the adoptive parents are not residents of New York, and section 114 of the New York act provides (like sections 15 and 16 of our statute) that after the order for adoption is entered, the adoptive parents and the child shall sustain toward each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation, including the right of inheritance from each other (except in certain instances with which we are not now concerned). The courts of New York, construing the provisions of their act, have held that under it the right of inheritance from the adoptive parents is conferred on the child. Matter of Cook, *Page 47 187 N.Y. 253; Gilliam v. Guaranty Trust Co., 186 N.Y. 127;Matter of Mac Rae, 189 N.Y. 142. It would therefore seem that public policy required that this state should apply the rule approved by the weight of authority in this country and give full recognition to the status of an adopted child as defined by the adoption statutes of New York and as fixed by decree of a New York court pursuant to such statutes, including the right to take from the parents land and personal property having situs here, to the same extent as a natural born child would take and such conclusion finds support in Dayton v. Adkisson, 45 N.J. Eq. 603; Tuttle v. Woolworth, 74 N.J. Eq. 310; Stout v. Cook,77 N.J. Eq. 153; affirmed, 79 N.J. Eq. 640. But Vice-Chancellor Church reached the opposite conclusion as to real property inFrey v. Nielson, 99 N.J. Eq. 135, wherein he held that a child adopted under the New York law could not inherit from her adoptive father land in this state.
Reference to cases upon which the learned vice-chancellor relied in arriving at his conclusion may be helpful in determining the instant case. Hood v. McGehee, 237 U.S. 611,
involved the right of children adopted in Louisiana to inherit from the adoptive father land in Alabama, the claim on behalf of the children being that by virtue of article 4, section 1 of the federal constitution and the act of congress pursuant thereto, the Louisiana record was entitled to full faith and credit in Alabama, but the United States supreme court held that the Alabama statute of descent, as construed by the supreme court of that state, excludes children adopted by proceedings in other states, citing Brown v. Finley, 157 Ala. 424 (also cited by the vice-chancellor) in which a Georgia adoption was considered and that the full faith and credit clause of the constitution could not apply because Alabama has the right by statute and decision of its highest court to determine the devolution of Alabama by descent. This is also the purport of the decision of the United States supreme court in Olmsted v. Olmsted,216 U.S. 386 (also cited by the vice-chancellor). Alabama is one of the few states which holds that a foreign adoption gives the adopted *Page 48 
child no right to inherit from the adoptive parents land in another state and it is interesting to note that in a case involving the same adoption as in Brown v. Finley, supra, and upon the same state of facts, except that the land in question was in Tennessee, the Tennessee supreme court held that the children adopted in Georgia had, under the law of comity, the right to inherit Tennessee land because Tennessee had adoption laws similar to Georgia. Finley v. Brown, 122 Tenn. 316.
 Birtwhistle v. Vardill, 2 Cl. F. 571, the leading English case on the subject, is also cited by the learned vice-chancellor. This decision has been criticised by other English decisions and by decisions in this country, includingDayton v. Adkisson, supra. The English case involved the right of a child born in Scotland of parents domiciled there, who were unmarried at the time of his birth, which child was made legitimate by the law of Scotland through the subsequent marriage of his parents, to take lands of his father situate in England. The court held that the law of inheritance in England had been fixed by the so-called statute of Merton (20 Hen. 3 ch. 9) under which none were legitimate heirs except those born in lawful wedlock, but the court did not deny the status of the child as a legitimate child under the law of Scotland, or that being legitimate in Scotland he was also legitimate in England.
The Birtwhistle Case does not apply to personal property and we have no statute in this state similar to the statute of Merton, but we have our adoption statute and statutes legitimating children born out of wedlock, whose parents afterward marry (P.L. 1915 p. 333) and children born of a ceremonial marriage afterwards annulled or declared void (P.L.1924 p. 318) and giving such children the right of inheritance from their parents, which statutes are contrary to the statute of Merton. Whatever may be the rule to apply in this state as to the right of a child under a foreign adoption to take land in this state by inheritance from an adoptive parent, I know of no case which is authority for denying the right of a child adopted under a New York court decree to *Page 49 
take by inheritance from her adoptive parent personal property having its situs here, and I shall hold that comity between states requires that the New York decree of adoption in question should be recognized in this case as giving the adopted child the same status as a lawful child so far as concerns the personal estate of her adoptive mother, and that therefore she is a person interested in such estate. Cum. Supp. 2628 § 146, 169 sub. 1.
The result is that the order of the orphans court directing the administrator to file an inventory will be affirmed. *Page 50