The subject to which the present appeal relates can be succinctly revealed. One William W. Creasey, a resident of East Orange, Essex County, New Jersey, died testate on March 28th, 1946. He was a member of a partnership known as Robert C. King 
Company, constituting a sales agency for manufacturers of knit wear and sports wear. The duration of the partnership was to terminate on December 31st, 1946.
The agreement among the three partners dated November 22d 1943, pursuant to which the association operated, embraced the following articles of particular significance and pertinency:
"Thirteenth: In the event of the death of any one of the partners, limited or general, prior to December 31, 1946, it is agreed that the partnership shall continue until the end of the calendar year in which such death occurs and then terminate. During such period the estate of the deceased partner shall receive all payments by way of interest on capital or shares of profits which the deceased partner would have been entitled to receive had he lived, and in like manner shall bear the deceased partner's proportion of losses, if any. However, the salary payable to any partner shall cease from the date of his death. The personal representatives of a deceased partner shall have no right to take part in the management of the business.
"Fourteenth: In arriving at the value of the interest of any retiring or deceased partner, no value shall be placed on good will nor shall it be regarded as property or as an asset of the partnership, and there shall be no charge against the remaining partner or partners for the good will or firm name of the business."
The one-third share of the profits derived from the partnership operations during the interval between the decedent's death and the end of the calendar year amounted to $36,363.85. Since the share of those profits was not receivable until a date subsequent to the death of the decedent, the Tax *Page 113 
Bureau discounted the amount to reflect the value as of the date of death. Such value was determined to be $35,049.49 and has been subjected to transfer inheritance taxation as an asset of the decedent's estate within the purview of R.S. 54:34-1, a;N.J.S.A. 54:34-1, a. The executrix of the decedent's estate protests.
I may pause to state that the taxing authorities have accepted the valuations reported by the appellant including her calculation of the decedent's share of the partnership profits. Therefore the appraisals are not in the field of controversy.
The point at issue is whether or not the contractual interest held by the decedent in the profits to accrue after his death is a taxable asset of his estate.
In moving towards the solution of that question I face an unreported opinion rendered and filed in this court on October 27th, 1932, by my predecessor, Vice-Ordinary Buchanan, in a cause entitled In re Estate of Richard H. Williams, deceased
(Williams v. Bugbee). It appears to be decisive of the question projected by the present appeal. It is accordingly an authoritative precedent (a full copy of which I shall append to this memorandum with the intention that it shall accompany mine in the event of an appeal. See post 140 N.J. Eq. 118).
I am importuned by counsel for the appellant either to differentiate the Williams Case or to express a discordant conclusion. Although it has been said that a precedent embalms a principle, and although I do not assent to the proposition that our courts must abjectly submit to an unqualified enslavement and subserviency to early precedents, yet it would be disastrous frequently to have one law on the same subject in the morning and another at night. In Carroll v. Local No. 269, c., ElectricalWorkers, 133 N.J. Eq. 144; 31 Atl. Rep. 2d 223, I professed that: "It is the peculiar genius and strength of the common law that no decision is stare decisis when it has lost its usefulness in our social evolution; it is distinguished, and if times have sufficiently changed, overruled. Judicial opinions do not always preserve the social statics of another generation." *Page 114 
However, one should not be incorrigible in the performance of judicial service. There are certain commandments in the law which must be heeded and respected. Among them is that proclaimed by Chancellor Kent: "When a decision upon a point of law has been made upon solemn argument, and upon mature deliberation, the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions by it. When a rule has once been deliberately adopted and declared, it ought never to be disturbed by the same court, except for very urgentreasons and upon a clear manifestation of error." (Italics mine.) 1 Kent Com. 475.
Despite man's modern propensity for innovations, that rule of judicial action has continued to retain its prestige. Bowman v.Freeholders of Essex, 73 N.J. Law 543; 64 Atl. Rep. 1010;Freeholders v. Jersey City, c., Street Railway Co.,85 N.J. Law 179; 88 Atl. Rep. 1061; McFadden v. Palmer, 83 N.J. Eq. 621; 92 Atl. Rep. 396; Jersey City v. Blum, 101 N.J. Law 93;127 Atl. Rep. 214; Graves v. State, 45 N.J. Law 203; affirmed,Id. 347; State v. Taylor, 68 N.J. Law 276; 53 Atl. Rep. 392;Cohen v. Cohen, 121 N.J. Eq. 299; 188 Atl. Rep. 244; Colligan
v. 680 Newark Avenue Realty Corp., 131 N.J. Law 520;37 Atl. Rep. 2d 206; Fraser v. State Board of Education,133 N.J. Law 597; 45 Atl. Rep. 2d 590. It is well that the diminishments of the beneficial keynotes of judicial action have been temperate and not revolutionary.
And so it is that established authority enjoins me to tread in the footsteps of my learned predecessor in the decision of this appeal, unless I can detect urgent reasons to the contrary or a clear manifestation of error in the former decision.
In their factual lineaments, the Williams Case and the causesub judice are noticeably of the same feather and family. Indeed, the resemblance is extraordinary, an assertion which I could convincingly demonstrate but only at the risk of tedium. It is incommodious to sharpen the parallel aspects of the two cases since the transcripts of the proofs of both are immediately available in the files. I prefer bluntly to confess *Page 115 
that I am unable to discern in the factual conformations of the two cases any shade of difference which would materially diversify the fundamental legal problems presented then and now again, for decision.
The alternative insistence of the appellant obliges me next to consider whether the previous decision was, and now manifestly appears to be, an erroneous declaration of the law.
Initially I must take notice that the decretal offspring of theWilliams Case is now almost fifteen years of age, during which span of time it has received authoritative recognition.
Vice-Ordinary Buchanan in his opinion explained: "At decedent's death, therefore, his interest in the firm (disregarding his special accounts on the firm's books was his 50% share of the firm's capital account plus the value — commuted or discounted as of the date of his death — of his 35% share in the firm's profits for the next year and a half to come. That is precisely what the Comptroller has included in the taxable assets." Observing that the value of the good will of the business, as here, was not included as an asset of the estate, and after noting that the normal difficulty of forecasting at the time of the partner's death whether the future operations of the enterprise would bring profits or losses had, as in the present case, been eliminated by the actualities, the Vice-Ordinary continued: "All this however is beside the issue on the appeal — for as has been said there is no question raised as to the accuracy or method of computing the value: the only issue is as to whether the Comptroller erred in including, in the taxable assets of the estate, decedent's interest in the future profits. It seems entirely clear that his action in so doing was not error; and that the tax must be affirmed, with costs." Such was his deliberate conclusion, which was effectuated by the final decree of this court.
Metaphorically expressed, counsel for the appellant endeavors to squeeze me betwen two precedents — the Williams Case and the decision in Bull v. United States (1935), 295 U.S. 247;55 S.Ct. 695; 79 L.Ed. 1421, and to persuade me that my only means of escape is to exhibit allegiance to the judgment of the superior tribunal. There is no such *Page 116 
pinch. The ruling in the Bull Case is bereft of pressure in the immediate situation because from a studious examination of its ingredients, I do not understand it to hold that a right to receive future income payments is not "property" includable in the gross estate of a decedent pursuant to the import and intent of a transfer inheritance statute such as our own.
If the federal courts do not behold the decision announced in the Bull Case as decisive of the present question, why should I do so? For illustration, examine the recent (1942) comprehensive opinion of the Circuit Court of Appeals, First Circuit, inMcClennen et al. v. Commissioner of Internal Revenue,131 Fed. Rep. 2d 165, in which the conviction adopted by this court in the Williams Case is refreshed and reinforced, despite the citation of Bull v. United States, supra. Moreover, do not ignore the critical comments of Professor Randolph E. Paul concerning the fragility and infirmities of the decision in theBull Case in its dedication to the subject here in dispute. 1Paul, Federal Estate and Gift Taxation 198 § 408. Counsel for the appellant reminds me that this criticism is by "this one man, an individual." Yes, but in a given case the same might be said of Chitty, Kent, Blackstone, Williston, Pomeroy, Wigmore, and many others whose scholarly products have become the implements of our profession.
The persistent reliance on the Bull Case provokes me to state that I do not concur in the premise that the judicial interpretation and application of our own Transfer Inheritance Tax Act is to be twisted to accommodate its exactions to those of the federal income tax legislation.
In the instant case, I am solely considerate of the legislative authority of this state to impose a tax upon the decedent's transfer of his contractual right to the future profits of the partnership. Whether the federal government in a given case is empowered to levy an estate tax upon the right to the future profits and also an income tax upon the actual receipt of the income seems to me to be a bone appropriately to be picked in the domain of the federal jurisdiction. See Helvering v. Enright'sEstate (1941). 312 U.S. 636, 641; 61 S.Ct. 777, 780;85 L.Ed. 1093 footnote 9. I am not at the moment *Page 117 
interested whether both assessments can be merged into one, which was the alleged fallacy to which the adjudication in the BullCase was obviously addressed. Perhaps the actual fruition of a vested claim for future profits may justify an income tax, but that circumstance does not seem to me to prohibit the incorporation of the value of that acknowledged chose in action in the gross estate of the decedent under the comprehensive terms of our statute. And so, I am not persuaded that the previous decision of this court was or is manifestly incorrect and unsound.
Then, too, I can add with supporting authority that even were I to suppose that the adjudications of the federal court and the federal tax agencies are disputatious (to which I shake my head horizontally), it is nevertheless firmly established by our local decisions that the interpretation and applicability of our transfer inheritance statute reposes primarily in the courts of this state and that the decisions of foreign jurisdictions are not to be accorded the leverage of predominant and obligatory edicts. Kunhardt v. Bugbee, 3 N.J. Mis. R. 1107;130 Atl. Rep. 660; Koch v. McCutcheon, 111 N.J. Law 154; 167 Atl. Rep. 752;In re Hartford, 122 N.J. Eq. 489, 494; 194 Atl. Rep. 800;Nicholas v. Martin, 128 N.J. Eq. 344; 15 Atl. Rep. 2d235; Squier v. Martin, 131 N.J. Eq. 263, 269; 24 Atl. Rep.
2d 865.
The reasons which I have expressed induce me to affirm and sustain the assessment to which the present appeal is confined. *Page 118