9 N.J. Super. 301 (1950)
74 A.2d 350
JAMES N. GREAVES AND RUTH M. GREAVES, HIS WIFE, PLAINTIFFS,
v.
GEORGE FOGEL, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 26, 1950.
Mr. Charles S. Moore for the plaintiffs (Messrs. Moore, Butler & McGee, attorneys).
Mr. Bertram M. Saxe for the defendant.
*302 HANEMAN, J.S.C.
This is a suit seeking the specific performance of an agreement to purchase real estate. On or about May 28, 1948, the plaintiffs entered into an agreement to sell a certain parcel of real estate situate in the City of Linwood, Atlantic County, New Jersey, to the defendant. On June 14, 1948, in accordance with the terms of said agreement, the parties met at the appointed time and place for final settlement or closing. At that time the defendant refused to pay the purchase price for the reason that the plaintiffs did not have legal title to said real estate under the laws of the State of New Jersey.
The parties hereto have stipulated all of the facts. The pertinent facts in connection herewith are as follows:
One James Greaves, of Prospect Park, Delaware County, Pennsylvania, died, a widower and intestate, on November 26, 1947, seized of the title to the real estate described in said written agreement of sale. Plaintiff, James N. Greaves, but known then as James Nellius Marshall, was born in the Borough of Marcus Hook, Delaware County, Pennsylvania, November 22, 1906. While plaintiff, James N. Greaves, was a young baby he was taken by the aforesaid James Greaves and his wife. From infancy the said decedent, James Greaves, and his wife cared for and raised plaintiff, James N. Greaves, as their own child. On March 25, 1919, the wife of James Greaves died. On or about December 15, 1920, decedent, said James Greaves, then a widower, petitioned the Court of Common Pleas of Delaware County, Pennsylvania, a court of competent jurisdiction, for permission to adopt as his own child plaintiff James N. Greaves. In response to said petition, and after a hearing on same, said Common Pleas Court of Delaware County, Pennsylvania, entered a decree on December 21, 1920, which decreed that:
1. Said minor, James Nellius Marshall, shall thereafter be the adopted son of said adoptive father, James Greaves.
2. The name of said James Nellius Marshall shall thereafter be James Nellius Greaves.

*303 3. Said James Nellius Greaves shall thereafter have all of the rights of a child and heir of said James Greaves and be subject to the duties of such child.
Plaintiff, James N. Greaves, is the same person named and described in the foregoing as James Nellius Marshall and James Nellius Greaves, and by virtue of said decree became the adopted son of decedent, James Greaves. Decedent, James Greaves, never had any child born to him in his lifetime and never adopted any other child than plaintiff, James N. Greaves. Plaintiff, James N. Greaves, because of said adoption, is the only child and heir of decedent, James Greaves, under the laws of the State of Pennsylvania, and by virtue thereof claims to be the owner of the real estate in question. Immediately following the death of decedent, James Greaves, plaintiff, James N. Greaves, took possession of the real estate described in the agreement and still holds possession of same.
The laws for adoption of children in the State of Pennsylvania in their essential requirements are similar to those of the State of New Jersey.
The State of Pennsylvania does not have separate statutes dealing with the distribution of personal property and the devolution of real estate. They have one statute dealing with intestacy. Section 16 of this Act, P.L. 1917, p. 429, 20 P.S., § 101, among other things, provides as follows:
"Any minor or adult person adopted according to law, and the adopting parent or parents shall, respectively, inherit and take, by devolution from and through each other, personal estate as next of kin, and real estate as heirs, under the provisions of this act, as fully as if the person adopted had been born a lawful child of the adopting parent or parents."
This same Pennsylvania statute dealing with intestacy law also provides that when a person dies intestate, leaving no widow but one child, all the real and personal property goes to this one child. 20 P.S., § 51.
The foregoing laws were in effect on November 26, 1947, the date of James Greaves' death intestate.
*304 The sole question for determination therefore is whether a child adopted in a state other than New Jersey inherits real estate in New Jersey under the statute of descent upon the death of the adopting parent intestate.
Plaintiffs' counsel have filed a most scholarly, interesting and exhaustive brief to sustain their title. Admittedly, they are confronted with the decision of the Court of Chancery in Frey v. Nielson, 99 N.J. Eq. 135, 132 A. 765 (Ch. 1926), in which the court decided that "our statute of descent precludes inheritance by any except children born in wedlock, and that the modification by statute permitting adopted children to inherit applies only to children adopted under the provisions of the New Jersey statute."
Plaintiffs' argument concerns itself with the impropriety of the decision in Frey v. Nielson, supra, as well as the harshness of the law as there enunciated. As sympathetic as this court may feel to the position of the plaintiffs, I am bound to recognize the opinion of this court above cited.
We are here confronted with the doctrine of stare decisis. It is to be noted that the opinion in Frey v. Nielson, supra, was filed March 26, 1926. From then to date, as far as research has disclosed, it has stood unreversed as the law of the State. Although Vice-Chancellor Fielder appears to have expressed some doubt as to the propriety of the result in Frey v. Nielson, supra, in In re Finkenzeller, 105 N.J. Eq. 44, 146 A. 656 (Prerog. 1929), the question of descent of real estate was not before him, the sole problem there involved being the distribution of personalty.
It has long been a recognized principle that a rule of law having once been deliberately adopted and declared, ought never be disturbed by the same court except for very urgent reasons and upon a clear manifestation of error.
In Bowman v. Freeholders of Essex, 73 N.J.L. 543, 64 A. 1010 (E. & A. 1906), the court said at p. 547:
"`When a decision upon a point of law has been made upon solemn argument and upon mature deliberation, the community have a right to regard it as a just declaration or exposition of the law, and to *305 regulate their actions by it. When a rule has once been deliberately adopted and declared, it ought never to be disturbed by the same court, except for very urgent reasons and upon a clear manifestation of error.' 1 Kent Com. 475. Most of the present members of this court have been appointed since the promulgation of the two decisions referred to, and perhaps, if the question presented by this writ of error was one of novel impression a different conclusion might be reached. But this fact affords no ground for our refusal to accept and enforce the rule which our predecessors have established. As has already been said, nothing short of an absolute conviction of its unsoundness would justify such action on our part."
In Colligan v. 680 Newark Ave. Realty Corp., 131 N.J.L. 520, 37 A.2d 206 (E. & A. 1944), the court said at p. 532:
"A principle so deeply rooted, long and recently supported, with ramifications that are not immediately discernible, ought not be overthrown. It involves property rights and duties set up in leases and other undertakings made in reliance thereon. I submit that the overruling of it would be contrary to sound policy. When the law on a subject has been clearly stated by the courts and long adhered to, people form their plans, make their engagements and enter upon their ventures in reliance thereon, rightfully and necessarily so. It is highly disturbing for the court suddenly to reverse its conception of the law, particularly when that reversal relates to the rights and liabilities incident to property. The prevailing rule thereon has recently been deduced from the cases and stated thus in 21 C.J.S., tit. `Courts,' 396, § 216:
"`Where judicial decisions may be fairly presumed to have entered into the business transactions of a country, and have become established as rules of property, it is the duty of the court, on the principle of stare decisis, to adhere to such decisions without regard to how it might be inclined to decide if the question were new, and they should not be disturbed except for the most cogent reasons. The rule that such final decisions will ordinarily be adhered to even when they are erroneous applies to decisions relating to real property with particular force.'
"The decisions of our own court fully sustain that position. `If the decision of a court of last resort is to be overturned by that body whenever its accuracy may be thought by the judges to be questionable, it is difficult to divine (in the language of the late Chief Justice Beasley, in Graves v. State, 16 Vr. 208), upon what stable basis the administration of the law is to be conducted.' Bowman v. Freeholders of Essex, 73 N.J.L. 543, 547. `This court will not revise, much less overturn, a decision made by it, upon a matter which was directly presented for its determination, except upon the fullest conviction that it is erroneous. And it will not do so, even then, when the decision *306 has been so long acquiesced in, and acted upon, that a return to the proper principle would disastrously affect existing interests.' State v. Taylor, 68 Id. 276, 279. See also, McFadden v. Palmer, 83 N.J. Eq. 621, 624."
In Creasey v. Zink, 140 N.J. Eq. 111, 53 A.2d 715 (Prerog. 1947), the court said at p. 113, as follows:
"I am importuned by counsel for the appellant either to differentiate the Williams case or to express a discordant conclusion. Although it has been said that a precedent embalms a principle, and although I do not assent to the proposition that our courts must abjectly submit to an unqualified enslavement and subserviency to early precedents, yet it would be disastrous frequently to have one law on the same subject in the morning and another at night. In Carroll v. Local No. 269, &c., Electrical Workers, 133 N.J. Eq. 144, 31 Atl. Rep.2d 223, I professed that: `It is the peculiar genius and strength of the common law that no decision is stare decisis when it has lost its usefulness in our social evolution; it is distinguished, and if times have sufficiently changed, over-ruled. Judicial opinions do not always preserve the social statics of another generation.' However, one should not be incorrigible in the performance of judicial service. There are certain commandments in the law which must be heeded and respected. * * * Despite man's modern propensity for innovations, that rule of judicial action has continued to retain its prestige."
In State v. Herbert, 92 N.J.L. 341, 105 A. 796 (Sup. Ct. 1918), the court said, at p. 350:
"It is far more pernicious to the efficient administration of the law to ignore precedents than to follow them, even though they may, occasionally, work a hardship.
"Firmly established precedents should not be treated as mere antiquated judicial wisdom and out of joint with modern time, unless the reason which called them into being has ceased."
See also McFadden v. Palmer, 83 N.J. Eq. 621, 92 A. 396 (E. & A. 1914); Ramsey v. Hutchinson, 117 N.J.L. 222, 187 A. 650 (E. & A. 1936); Jersey City v. Blum, 101 N.J.L. 93, 127 A. 214 (E. & A. 1925); Fraser v. State Board of Education, 133 N.J.L. 597, 45 A.2d 590 (E. & A. 1946); Woulfe v. Associated Realties Corp., 130 N.J. Eq. 519, 23 A.2d 399 (Ch. 1942); 21 C.J.S., p. 297 et seq.; 14 Amer. Jur. 283 et seq.
*307 I do not conceive that the rule established in Frey v. Nielson, supra, has lost its usefulness in our social evolution, nor has there been presented such urgent reason or clear manifestation of error as will move me to reverse the rule in Frey v. Nielson, supra. The doctrine of stare decisis applies with particular force and strictness to decisions which have determined questions concerning real property and vested rights. Colligan v. 680 Newark Ave. Realty Corp., supra; 14 Amer. Jur. 286; 21 C.J.S. 396. The earlier decision may have had an unfortunate effect in some cases upon children adopted outside of the State of New Jersey, but as above pointed out, it should not be disturbed by this court, in which it was promulgated, except for very urgent reasons and upon a clear manifestation of error.
Had the law here concerned not been determined prior to the case sub judice, and were this a matter of novel impression, I might even have been disposed to arrive at a different conclusion from that reached by the learned judge in Frey v. Nielson, supra. The law of that case, however, having been the law of this State for so many years, it is highly conceivable that a number of parcels of real estate would have been affected in the passage of years. The rule applies with particular force where a reversal relates to rights and liabilities incident to property. If it is erroneous in law the correction should now lie with the appellate courts of this State and not with the court which promulgated it.
In view of the foregoing, I feel constrained to follow the decision in Frey v. Nielson, supra, and the complaint will be dismissed.