## Hall's Estate

Before Gest, Henderson, Van Dusen, Stearne, and Sinkler, JJ.

*George Ross*, for exceptant; *Edward F. Hitchcock*, contra.

GEST, J., January 12, 1934.—Louis Brewer Hall died in 1932, domiciled in Pennsylvania and a resident of Philadelphia, intestate, unmarried, and leaving issue a minor son, Louis B. Hall, Jr., and another minor son, Alfred Willis Hall, who had been adopted by John D. McMullin and Charlotte, his wife, under a decree of the Orphans' Court of Burlington County, N. J., on January 3, 1919. By this decree his name was changed, and he has since been known as Robert McMullin. The adoption was decreed with the written consent of his natural

father, this decedent, who, it is conceded, was at that time domiciled in New Jersey. In accordance with the New Jersey statute, the decree of adoption declared that "the rights, duties, privileges and relations existing between the minor child and his parents shall be in all respects at an end, *excepting the right of inheritance*," and, further, that "the rights, duties, privileges and relations between the said minor child and the said John D. McMullin and his wife, his parents by adoption, are and shall be henceforth in all respects the same, *including the right of inheritance, as* if the said minor child had been born to his adopted parents in lawful wedlock." Under the law of Pennsylvania, adopted persons are deprived of their right to inherit from or through their natural parents by section 16(b) of the Intestate Act of June 7, 1917, P. L. 429, and at the audit the question was raised whether Robert McMullin was entitled to share in the estate of his natural father, together with the other son, Louis B. Hall, Jr. The auditing judge, under the Act of May 6, 1931, P. L. 98, appointed George Ross, Esq., as guardian ad litem to protect the interests of Robert McMullin, and decided that the entire estate was distributable to Louis B. Hall, Jr., to the exclusion of Robert McMullin, whose guardian ad litem filed these exceptions.

As this decedent died intestate, domiciled here, it is clear that under section 7 of the Intestate Act of 1917 his personal estate would be distributable between his two children, unless the adoption of his son Alfred, now Robert McMullin, in New Jersey deprived the latter of his right.

Adoption was unknown to the common law and is purely of statutory creation: Benson v. Nicholas, 246 Pa. 229; Thomas' Estate, 2 D. & C. 89; and it should follow that the rights and duties of the parties to the adoption are governed by the statute under which the adoption was made. However, under the law of Pennsylvania, section 16(b) of the Intestate Act of 1917, a "person adopted according to law" cannot inherit from his natural parents. This section of the statute is invoked, and the argument is that, under it, Robert McMullin must lose his inheritance.

By the New Jersey decree of adoption, the right of inheritance of Robert McMullin, from his natural parents, Louis Brewer Hall and his wife, was expressly saved, and if Louis Brewer Hall had continued his domicile in New Jersey, Robert McMullin would inherit; Louis Brewer Hall, however, removed to Pennsylvania and died domiciled here. Now it seems to us that the right of Louis Brewer Hall, Jr., by his guardian, to exclude his brother, Robert McMullin, from any share in their father's estate, being founded upon the New Jersey decree, is governed and restricted by the terms of that decree itself, which reserved to Robert McMullin the right to inherit from his natural father. Adoption is the artificial creation by statutory procedure of the relationship of parent and child, unknown to the common law, as we have said, and so differs essentially from legitimation, which presupposes a natural relationship. According to the theory of the adjudication, this artificial status, once established by a decree of a foreign court, of itself determines the rights of succession and descent of property, irrespective of the local law on the subject. And, as in all cases involving the conflict of laws, the decisions are numerous and by no means harmonious. It seems to us, however, that in view of the artificial character of the status conferred by the decree of the foreign court and of the fact that the said decree is in derogation of the common law, the rights of inheritance reserved in the decree should be determined by our local law.

In this case, the circumstances are somewhat peculiar, in that the adopted child is not making claim to his adoptive father's estate by virtue of his status as an adopted child, but making a claim as a natural-born heir of his own

father, under a right reserved to him in the decree of adoption. It has been questioned whether the decree of adoption has any extraterritorial effect: Brown v. Finley, 157 Ala. 424 (a case of real estate); and it has been held by the Supreme Court of Illinois (Keegan v. Geraghty et al., 101 Ill. 26) that the rights of inheritance acquired by an adopted child under the law of Wisconsin, where he was adopted, would be recognized in Illinois only so far as they were not inconsistent with the Illinois law of descent.

In Ross v. Ross, 129 Mass. 243, which is a case often cited, Ross, domiciled in Pennsylvania, adopted a child there under the Act of 1855 and afterwards removed with the child to Massachusetts, where he died. The court held that this child was entitled as heir, in preference to the brother of his adoptive father. The adoption laws of Pennsylvania and of Massachusetts were substantially similar, and the court said (p. 265): "The status of the demandant, as adopted child of the intestate, in the State in which both were domiciled at the time of the adoption, was acquired in substantially the same manner, and was precisely the same so far as concerned his relation to, and his capacity to inherit the estate of, the adopting father, as that which he might have acquired in this Commonwealth, had the parties been then domiciled here." See note to Brown v. Finley, 16 Ann. Cas. 778, 21 L. R. A., N. S. 679. Here, however, the two States, New Jersey and Pennsylvania, have different rules on the very subject of inheritance. In Burnett's Estate, 219 Pa. 599, the court held that, since adoption is not repugnant to the jurisprudence of Pennsylvania, an adoption in Ohio would be recognized, but that, since a child adopted in Pennsylvania could not inherit from collateral kindred of the adopting parents, it followed that a child adopted in Ohio could have no greater rights than one adopted in Pennsylvania and likewise could not inherit from collateral kindred of the adopting parents. This is the converse of the present case, and the same reasoning should apply. In Whiting's Estate, 70 Pitts. 785, cited by the exceptant, the minors were adopted by the second husband of their mother under the decree of a probate court in Ohio, both their natural mother, their adoptive father, and they themselves being always domiciled in Ohio. Under the law of Ohio an adopted child can inherit from its natural relatives. Under the Pennsylvania law it cannot. The Orphans' Court of Fayette County awarded to them their distributive share of the estate of the aunt of their natural father, and it was there said: "The statute of adoption in this State cannot supply or extend the scope and effect of the Ohio statute so as to create a disability not inherent in the Ohio statute." The present case is stronger than Whiting's Estate, for the decree in that case did not expressly reserve the right of inheritance, but the court relied upon the decisions of the appellate courts in Ohio, which held that the adoption in such a case did not take away from the adopted child the right to inherit from his natural relative. Here, the reservation of the right is expressly saved by the terms of the decree itself.

In Anderson v. French et al., 77 N. H. 509, relied upon by counsel in support of the adjudication, Mary Fitts died intestate in New Hampshire, having had two brothers, Franklin and George. Franklin died in New Hampshire, having removed there from Massachusetts, where he had adopted a daughter, Evalena; George had died leaving three sons. The question was whether Evalena was entitled to share with the sons of George. Under the adoption act of Massachusetts, Evalena could not inherit from the sister of her adoptive father; under the adoption act of New Hampshire, she could inherit. The Supreme Court of New Hampshire held that Evalena was so entitled, notwithstanding a vigorous dissent by Parsons, C. J., who said (p. 518): "It is to be kept in mind that the question is not whether the appellant [Evalena] has acquired the

*status* of an adopted child of a brother of the deceased intestate, but whether she has acquired the *status* of next of kin to her so as to be entitled under New Hampshire law to share in the distribution of the estate." Anderson v. French et al. is fully annotated in L. R. A. 1916A, 660, and 40 Ann. Cas. 89, where it is freely commented upon. Anderson v. French et al. is of course not binding on us, nor indeed is Whiting's Estate, but the latter is a decision of an orphans' court of our own State and entitled to careful consideration.

Many of the cases which we have examined have, in our opinion, somewhat confused the subject by holding that the status, as it may be called, of an adopted child is in effect equivalent to the status by matrimony of husband and wife, and to the status of an illegitimate child legitimated by statute or affiliation proceedings authorized by law: see Moretti's Estate, 16 D. & C. 715; but, as it appears to us, an adoption should be considered also from a very different point of view, namely, that of contract, for the adoption proceedings in this case are really contractual in their nature. And it may be observed that adoption, being unknown to the common law, was imported from the Roman law, where it was a well-recognized head of jurisprudence; and it was in its original form under the Roman law accomplished by a fictitious sale thrice repeated, for which in time a judicial decree was substituted: see Hunter, Roman law (2d ed.) 209; Buckland, Text Book of Roman Law 122. Here the natural father, by consenting to the adoption, surrendered his parental rights and was relieved of his parental duties, in consideration of their assumption by the adopting parents, and the minor, a child at that time only 3 months old, was transferred from his natural parents to his artificial or adopting parents, whose name was given to him; but his right of inheritance was an element of the contract reserved in his favor, and he should not be deprived of that right because his natural father died domiciled in another State, the adoption law of which differs in this material respect. The auditing judge, in commenting upon the suggestion of this hardship, admitted that the argument is a strong moral one, but answered by referring to the right of a parent to disinherit his child. But the parent did not do this, and, by assenting to the terms of the decree, showed that, so far from desiring to disinherit his offspring, he intended that it should not be disinherited.

The literature on the subject is voluminous, and we may refer to Story, Conflict of Laws, 142 note *a*; Goodrich, Conflict of Laws, 329; 22 Harv. L. Rev. 372, 535; Frey et al. v. Nielson et al., 99 N. J. Eq. 135, 132 Atl. 765; Riemann's Estate, 124 Kan. 539, 262 Pac. 16; Finkenzeller's Estate, 105 N. J. Eq. 44, 146 Atl. 656, and Bradley's Estate, 185 Wis. 393, 38 A. L. R. 1.

Without discussing the case in further detail, we rest our opinion on these grounds: First, our statute, section 7(*a*) of the Intestate Act of 1917 would govern, and Robert McMullin would be entitled to share in his natural father's estate, unless it be clearly shown that his rights have been divested; second, that the decree of adoption in New Jersey, which is relied upon to show that his rights are so divested, reserved in clear terms his right to inherit from his natural father; third, that the adoption proceedings in New Jersey were contractual in their nature, and this decedent, in permitting the adoption of his son by McMullin, reserved, in behalf of his infant son, the latter's right to inherit from his natural father.

The exceptions of George Ross, guardian ad litem of Robert McMullin, are sustained, the decree of distribution is amended, and the balance for distribution is awarded one half to Swarthmore National Bank & Trust Company, guardian of the estate of Louis Brewer Hall, Jr., and one half to the guardian, when duly appointed and qualified, of Robert McMullin.

SINKLER, J., concurring.—The learned opinion of Gest, J., holds that the decree of adoption made by the New Jersey court, in accordance with the statute of that State, constitutes a contract of mutual inheritance between the adopted child and his natural father. With this finding I concur, and likewise with sustaining the exceptions to my adjudication.