ARTHUR J. COLLIGAN, PLAINTIFF-APPELLANT, v. 680 NEWARK AVENUE REALTY CORPORATION, A CORPORATION, DEFENDANT-RESPONDENT.

Submitted May 28, 1943—Decided April 20, 1944.

For the appellant, *Gannon & Gannon*.

For the respondent, *David M. Klausner*.

The judges being equally divided on the question as to whether the judgment should be reversed, the judgment is affirmed solely because of such division, which renders any opinion by the court impossible.

PER CURIAM.

The judgment under review is affirmed by an equally divided court.

CASE, J. Plaintiff sued to recover for personal injuries resulting from the fall of an elevator. My view of the nature of the suit will appear in the course of this memorandum. The premises were under lease from the defendant owner to the United States of America for use as a post office and substation. Plaintiff was employed by the Post Office Department as superintendent of the station and as such was in full control of the leased premises on behalf of the tenant. The lease contained the following covenant:

"The Lessor shall, unless herein specified to the contrary, maintain the said premises in good repair and tenantable condition during the continuance of the lease, except in case of damage arising from the act or the negligence of the Government's agents or employees. For the purpose of so maintaining the premises, the lessor reserves the right at reasonable times to enter and inspect the premises and to make any necessary repairs to the building."

The leased premises embraced an electric freight elevator which was used and operated exclusively by the tenant and

its agents for the moving of post office goods between the first and second floors. Plaintiff was using the elevator for such a purpose, under his personal operation, when he received his injury. The lease contained no special reference to the elevator; it obligated the lessor, generally, to maintain the premises in good repair and tenantable condition and reserved to the lessor the right to enter, inspect and repair; it did not, in terms, state a duty to enter and inspect, and it did not reserve control. The lessor, except for his right to inspect and repair, had no power or right to admit people to the premises and, without exception, had no right to exclude them. The landlord was obligated to supply heat, but the heater—an oil burner—was in a cellar which the tenant had no occasion to use, which was not under its control and which was reached, not through the building, but by a separate entrance from the street. The case is lean in proofs. The condition of the cables immediately after the accident was described by a lay observer. He testified that some of the strands showed a fresh break and that others showed old breaks, and by "old" he meant, so he said, that the strands "were covered with grease and dirt, all black;" he added that some of the ends were frayed but he "would not say it [the state of the cable] showed a worn condition." There was no proof of the amount of use or of the length of time it would take a fresh break to become blackened with grease or of what, if any, inspection had been made. I am unable to concur in the suggestion that the elevator was under the control and management of the owner. Full management and control, except for such duty as lay in the covenant for general repairs, were in the tenant.

The use made by Colligan of the elevator was in his capacity as an employee of the lessee—thus in fact and thus by the allegation of his complaint. He was in the active performance of his duties. His rights there flowed out of his relationship with his employer. He had no privity either of estate or of contract with the landlord. The general rule is that where there is neither privity of estate nor privity of contract the owner of premises is not liable for injuries sustained by third persons by reason of the condition of the premises unless by invitation express or implied the owner induces them to come

upon the premises. *Clyne* v. *Helmes,* 61 *N. J. L.* 358, 368; *Eberle* v. *Productive Building and Loan Association,* 119 *Id.* 393. There is no substantial support for an argument of special invitation. In order to maintain an action of tort for breach of a contractual duty a plaintiff must have the same *status* under the contract as would entitle him to maintain an action upon the contract for a breach of its stipulation, *Fedor* v. *Albert,* 110 *Id.* 493; *Styles* v. *Long Co.,* 67 *Id.* 413; and this applies to real estate rental agreements, *Eberle* v. *Productive Building and Loan Association, supra.* The principle which, as enunciated in the Clyne case, was applied to a member of the tenant's household applies equally to an employee of the tenant. The continued recognition of that principle was manifested by this court in *Monohan* v. *Baime,* 125 *Id.* 280, in this language: "From the facts tendered and found in this cause there is no trespass upon the holding and principle in *Clyne* v. *Helmes,* 61 *N. J. L.* 358, and kindred cases * * *." Under the foregoing principle of law, thoroughly established in this state, the plaintiff, an employee of the tenant, could not maintain an action, either on contract or in tort, grounding in the contract.

Appellant argues that independent of contractual obligation he may hold the landlord upon the theory of retained control. (*Cf. Shemin* v. *Steinberg,* 117 *Id.* 458.)

The trial court considered, however, that the plaintiff had framed his complaint upon the lessor's duty to repair under the lease and upon a negligent failure in that contractual obligation; and that construction appears to be sound. Further, it is apparent that the defendant did not retain control of the elevator in the sense that a landlord retains control of the stairways, or of the roof, in a multiple tenant building; indeed, I suggest that neither the ordinary nor the technical use of the words "management" and "control" comprehends the relationship which the defendant bore to the leased premises or any part thereof. The plaintiff has not brought himself within any of the exceptions to the general rule.

But even if we assume that the plaintiff herein was one of those who could recover on a breach of that duty, the burden was upon him to prove either (a) that the defect had in fact

been brought to the previous notice of the defendant, or (b) that the defect had existed for such a space of time before the occurrence as would have afforded the defendant a reasonable opportunity to make proper inspection to ascertain the condition and to repair the defect. That burden rests upon a plaintiff, generally, in actions *ex delicto* to recover for injuries caused by defects in property conditions where defendant was under a duty to exercise reasonable care to keep the property in a safe condition for use. *Schnatterer* v. *Bamberger & Co.*, 81 *N. J. L.* 558. *Battschinger* v. *Robinson*, 83 *Id.* 739, is not at variance with that rule. There was proof in that case, as an examination of the record will disclose, that for at least a week before the accident the dumbwaiter rope was wearing so seriously that particles of lint from it floated into an apartment of one of the tenants and settled upon the casement and floor in sufficient quantity to be brushed up and that the fibres of the rope had broken away to the extent that as the rope passed the dumb-waiter opening the diminishing thickness of the rope at the weakened section was noticeable.

It is my view that inasmuch as the plaintiff was the superintendent of the building, in full charge thereof, he had knowledge of what had or had not been done by way of inspection and repair by the landlord and could well have testified thereon: also, that it was within his easy reach to procure evidence of the significance of the condition in which the elevator cables were found immediately after the accident; and that therefore he had by no means exhausted his available proof. If I correctly understand the view of the evidence upon which some members of the court reach their conclusion, it is that the plaintiff's proofs, with the inferences fairly to be drawn therefrom, made a jury case without resort to the doctrine of *res ipsa loquitur;* nevertheless their line of reasoning trenches close upon that doctrine and decisions cited in support of the argument include at least two cases, *Griffen* v. *Manice*, 166 *N. Y.* 188; 59 *N. E. Rep.* 925, and *Goldstein* v. *Pullman Co.*, 220 *N. Y.* 549; 116 *N. E. Rep.* 376, that turn upon it. For two reasons the doctrine of *res ipsa loquitur* should not be applied here: the instrumentality,

at the time of the accident, was in the possession and under the control or management of the plaintiff, *Conover* v. *Delaware, Lackawanna and Western Railroad Co.,* 92 *N. J. L.* 602; and the plaintiff did not adduce all of the testimony reasonably within his power, *Bahr* v. *Lombard, Ayres & Co.,* 53 *Id.* 233, 239.

For the reasons stated I conclude that the judgment of nonsuit should be affirmed.

But aside from the determination of the specific case now before us, I differ from the suggestion, urgently pressed, that the principle enunciated in *Clyne* v. *Helmes, supra,* should be overruled, and I therefore enter upon a more particular study of the applicable legal elements.

So far as is now pertinent the holding in the Clyne case was, first, that a landlord is exempt from liability for injuries sustained by a tenant by reason of the ruinous condition of the demised premises where there is neither contract nor fraud, and that this exemption extended as well to members of the family of the tenant as to those who were on the premises by his consent, and, second, that where there is neither privity of estate nor privity of contract the owner of the premises is not liable for injuries sustained by third persons unless by invitation, express or implied, the owner induces them to come upon the premises.

The Clyne decision was not *dictum,* either *obiter* or judicial. It was and is entitled to full force as a court-holding under the doctrine of *stare decisis.* All of the questions there answered were fairly raised and duly considered and decided, and one holding did not make *dicta* of the others. The adjudication on the subject of privity was within the issues. A point regularly and expressly decided does not lose its value as a precedent because the disposition might have been rested on some other ground stated in the opinion. *O'Brien* v. *Union Central Life Insurance Co.,* 100 *N. E. Rep.* 702; 207 *N. Y.* 180; *Florida Central Railroad Co.* v. *Schutte,* 103 *U. S.* 118; 26 *L. Ed.* 327; *McFarland* v. *Bush,* 94 *Tenn.* 538; 29 *S. W. Rep.* 899; 27 *L. R. A.* 662; *Vandalia Railroad Co.* v. *Schnull,* 122 *N. E. Rep.* 225; 188 *Ind.* 87; reversed on other grounds, 255 *U. S.* 113; 65 *L. Ed.* 539;

*Chicago, B. and Q. R. Co.* v. *Board of Supervisors* (*C. C. A.*), 31 *L. R. A.* (*N. S.*) 1117, 1125; *Kiernan* v. *City of Portland,* 57 *Or.* 454; 111 *Pac. Rep.* 379; 37 *L. R. A.* (*N. S.*) 332, 344; *United Railways and Electric Co.* v. *Mayor, &c., of Baltimore* (*Md.*), 88 *Atl. Rep.* 617; 15 *C. J.* 950, *tit.* "*Courts,*" § 344 (6) ; 21 *C. J. S., tit.* "*Courts,*" § 190 (b) ; 7 *R. C. L., tit.* "*Courts,*" § 31 (at *p.* 1005).

"Of course, where there are two grounds, upon either of which the judgment of the trial court can be rested, and the appellate court sustains both, the ruling on neither is *obiter,* but each is the judgment of the court, and of equal validity with the other." *Union Pacific Railroad Co.* v. *Mason City and F. D. R. Co.,* 199 *U. S.* 160; 50 *L. Ed.* 134.

Our decisions leave no room for doubt that the exemption of a landlord from liability for injuries sustained by a tenant, where there is neither contract nor fraud—that being a premise upon which is based a like exemption as to the tenant's family and others—was soundly stated. See the long line of cases beginning with *Naumberg* v. *Young,* 44 *N. J. L.* 331, and *Mullen* v. *Rainear,* 45 *Id.* 520, and extending down to and including *Schwartz* v. *Federal Deposit Insurance Corp.,* 127 *Id.* 556, wherein Mr. Justice Bodine, writing the opinion for this court, said : "In this state, the rule has been settled that the landlord is under no common law duty to make repairs to or maintain leased premises in good order." If it is sound law that the landlord is not liable to a tenant for injuries arising from the condition of the premises, unless that condition is a violation of some contractual duty undertaken by the landlord, it seems to follow, necessarily and with greater force, that a landlord is not liable to a member of the tenant's family or to an employee of the tenant or to anyone else on the premises at the instance of the tenant for injuries occasioned by some faulty condition of the building against which the landlord has not contracted. This leaves, as the available remedy, where appropriate, an action on the contract in the usual manner or an action for a tort arising out of a contractual duty. The latter is a well recognized ground for suit, *Eberle* v. *Productive Building and Loan Association, supra; Rich* v. *New York Central and*

*H. R. R. Co.,* 87 *N. Y.* 382; *Emmons* v. *Alvord* (*Mass.*), 59
*N. E. Rep.* 126; *Addison on Torts* (4*th ed.*) 17, and, because
it goes to a substantial distinction of remedial law, continues
notwithstanding the formal changes in procedure prescribed
by the Practice Act, *Wm. H. Jamouneau Co.* v. *Wetherill,* 98
*N. J. L.* 80; *Ward* v. *Huff,* 94 *Id.* 81. As I have already
said, it was such a suit that the trial court, properly, I think,
held the present action to be.

The doctrine stated in *Clyne* v. *Helmes, supra,* as applied to
claims against landowners, has been restated many times
both in the Supreme Court and in the Court of Errors and
Appeals. Some of the cases are: *Land* v. *Fitzgerald*
(*Supreme Court*), 68 *N. J. L.* 28; *Siggins* v. *McGill* (*Court
of Errors and Appeals*), 72 *Id.* 263 (liability sustained, how-
ever, on the ground, of retained control of the pasageways,
and invitation, in multiple tenant building) ; *Hasse* v. *Gietz*
(*Supreme Court*), 108 *Id.* 252; *Liebeck* v. *Bennis* (*Supreme
Court*), 4 *N. J. Mis. R.* 422; *Eberle* v. *Productive Building
and Loan Association* (*Court of Errors and Appeals*), 119
*N. J. L.* 393; *McKernan* v. *Commonwealth Trust Co.*
(*Supreme Court*), 120 *Id.* 345.

In the Eberle case, decided in 1938, the doctrine was
reaffirmed by this court, unanimously, in the very words of
the Clyne decision. See also our recent decision in *Brittain*
v. *Atlantic Refining Co.,* 126 *N. J. L.* 528.

Then, if there is a contract between the owner and the
tenant, may one who is not the tenant sue on the theory of
a tort arising out of an agreement made between the landlord
and the tenant to which agreement this third person was not
a party and which was not made for his benefit? Clearly
not. Following *Clyne* v. *Helmes, supra,* the Supreme Court
in *Hasse* v. *Gietz, supra,* and this court in *Eberle* v. *Produc-
tive Building and Loan Association, supra,* specifically so
held; and the plaintiff has not, in any manner recognized
·by the cases, established himself as one for whose benefit the
lease agreement was made.

The rule which shuts out an action grounding in a contract
unless there is privity of contract is not peculiar to leases of
real estate. It is a general rule of law. "The general rule

of law is, that one who is not a party to a contract, cannot sue in respect of a breach of duty arising out of the contract." *Marvin Safe Co.* v. *Ward,* 46 *N. J. L.* 19. "The general rule is entirely well settled that one who is not a party to a contract cannot sue in respect of a duty arising out of the contract, * * * We take it to be quite plain that the rule that no one can sue upon a contract unless he is a party to it cannot be evaded by bringing what is really an action for breach of contract in the form of an action of tort. 15 *Encycl. Pl. & Pr.* 504. It follows that, in order to maintain an action of tort for breach of a contractual duty, the plaintiff must have the same status under the contract as would entitle him to maintain an action upon contract for a breach of its stipulations." *Styles* v. *Long Co., supra.* "A duty, the breach of which is an actionable wrong, may arise from a contract, or be imposed by positive law, independent of contract. In the first case the party to the contract only can sue." *Appleby* v. *State (Court of Errors and Appeals),* 45 *Id.* 161. "Where a duty arises solely out of a contract no one can bring an action for its breach unless he be a party to the contract or one for whose benefit it is made." *Tomlinson* v. *Armour & Co. (Court of Errors and Appeals),* 75 *Id.* 748, 755. "To maintain an action of tort for breach of a contractual duty, the plaintiff must have the same status under the contract as would entitle him to maintain an action upon contract for a breach of its stipulations." *Fedor* v. *Albert (Court of Errors and Appeals,* 1933), 110 *Id.* 493.

It has been further suggested that the holding in *Clyne* v. *Helmes* has already been impliedly overruled by our decided cases. I flatly dissent from that view and consider that it is untenable in the light of the *verbatim* restatement unanimously voted by us in *Eberle* v. *Productive Building and Loan Association* and the other decisions cited above. Among the cases cited as *contra* the continued authority of *Clyne* v. *Helmes* is *Van Winkle* v. *American Steam Boiler Co.,* 52 *N. J. L.* 240. That case does not come at all within the field of landlord and tenant but it does state two legal principles which have a bearing; one relates to the duty of an owner of property to the public regardless of any agreement, and the

other is that when "any person undertakes the performance of an act which, if not done with care and skill, will be highly dangerous to the persons or lives of one or more persons, known or unknown, the law, *ipso facto,* imposes as a public duty the obligation to exercise such care and skill." Both of those principles are reflected in our law of landlord and tenant. The first is known there as the principle of retained control, and the second, with no distinguishing name, has nevertheless been recognized and applied since the decision in *LaBrasca* v. *Hinchman,* 81 *Id.* 367. The theory of retained control is simply that in certain instances the landlord, notwithstanding occupancy by tenants, has kept to his own control certain parts of the premises and that as to those parts he carries the liability that an owner, generally, owes to his invitees; and this, not because a rental agreement has placed the burden upon him, but because, either under or independent of the rental agreement, he has retained unto himself certain attributes to which that liability is incidental. As a rule, *Barthelmess* v. *Bergamo,* 103 *Id.* 397, this principle is confined to tenements or apartment houses where two or more tenants use the same facilities, such as halls, stairways, roofs or yards, and the retained control has to do only with such facilities. One of the early instances was *Gillvon* v. *Reilly,* 50 *Id.* 26, and of that type are *Bolitho* v. *Mintz,* 106 *Id.* 449, and *Hussey* v. *Long Dock Railroad Co.,* 100 *Id.* 380. But those cases do not overrule the Clyne decision.

The duty of an owner secondly mentioned was outlined in *Nilsson* v. *Abruzzo,* 107 *N. J. L.* 327, thus:

"It may be conceded that appellants were under no duty to either alter or repair the premises, but the fact is that they did undertake to make changes in the walls, and having assumed to make such changes they were bound to perform the work in a reasonably careful manner. For failure to do so liability is imposed upon them, not by reason of a duty arising from the contract, but upon the doctrine that one who undertakes to perform such work, even if done gratuitously, and does it negligently, whereby damage results, is liable for such negligence."

And that duty is the focal point in a number of the cases,

as *LaBrasca* v. *Hinchman, supra,* and *Granato* v. *Howard Savings Institution,* 120 *N. J. L.* 94; but by no implication do those decisions overrule the Clyne case. In *Maday* v. *New Jersey Title Guarantee and Trust Co.,* 127 *Id.* 426; *affirmed,* 129 *Id.* 53, the plaintiff was a tenant; the Clyne case was cited and followed.

As was said by Mr. Justice Perskie in *Rosenberg* v. *Krinick,* 116 *N. J. L.* 597 (at *p.* 601), neither the obligation upon an owner to repair a portion of the premises used in common by different tenants, nor the duty upon a landlord to use reasonable care once he begins to make repairs overrules the holding in *Clyne* v. *Helmes.* They go to entirely different legal elements.

Mr. Justice Heher, holding the opinion for a unanimous court in *LaFreda* v. *Woodward,* 125 *N. J. L.* 489 (decided October 10th, 1940), said:

"And it is likewise the rule, also grounded in the common law, that a landlord is under no greater duty to persons who come upon the leased lands, by invitation of the tenant, than he is to the tenant himself. Such usually enter the premises under the same title as the lessee, and not at the invitation of the landlord, express or implied, and are therefore so identified with the tenant as ordinarily to have no greater rights against the landlord as respects injuries sustained therein than has the tenant." citing in support thereof *Clyne* v. *Helmes* and other cases. In *Liebeck* v. *Bennis,* 4 *N. J. Mis. R.* 422, affirmed on the opinion below, 103 *N. J. L.* 700, the holding in the Clyne case was specifically upheld, together with the statement that the principle does not apply where the landlord undertakes to make repairs and performs the work of repair so negligently that a tenant or a member of the latter's family is thereby injured.

*Monohan* v. *Baime, supra,* extended the principle of retained control beyond the limitation of multiple tenant properties, but the Chancellor in writing the opinion made clear that the decision was reached by the finding that the principle of retained control applied, that is, that the control of the heating plant remained in and never left the owner; and if the words of the opinion mean what they say, the

decision was considered and intended by the writer of the opinion and by the members of the court who voted with it as not to be a trespass upon either the holding or the principle in *Clyne* v. *Helmes.*

I gather that those who find for liability base their conclusion upon neither of the two classes of obligations that I have been discussing. Not upon the second, of course. And not upon the first because that would be to follow a long line of decisions which have always been considered in harmony with *Clyne* v. *Helmes.* If the conclusion went that way, it would mean simply a difference as to whether conceded legal principles were being properly applied to the facts of the case and there would be no need to journey afield for the purpose of overruling a chain of cases, new and old. But if it be their view that the case comes within the recognized field of retained control, the more reason why there should not be a gratuitous overruling of an established legal principle.

In New York the exclusion of actions is even broader than in *Clyne* v. *Helmes.* The law there was stated by Chief Judge Cordozo (1931) with the polish and thoroughness characteristic of that jurist in *Cullings* v. *Goetz,* 256 *N. Y.* 287; 176 *N. E. Rep.* 397. The opinion says in part: "The subject has divided juridical opinion. Generally, however, in this country as in England, a covenant to repair does not impose upon the lessor a liability in tort at the suit of the lessee or of others lawfully on the land in the right of the lessee. * * * Liability in tort is an incident to occupation or control. * * * By preponderant opinion, occupation and control are not reserved through an agreement that the landlord will repair. * * * 'The power of control necessary to raise the duty * * * implies something more than the right or liability to repair the premises. It implies the power and the right to admit people to the premises and to exclude people from them.' * * * The rule in this state is settled in accord with the prevailing doctrine. * * * The doctrine, wise or unwise in its origin, has worked itself by common acquiescence into the tissues of our law. It is too deeply imbedded to be superseded or ignored. Hardly a day goes by in our great centers of population but it is applied by

judges and juries in cases great and small. Countless tenants, suing for personal injuries and proving nothing more than the breach of an agreement, have been dismissed without a remedy in adherence to the authority of *Schick* v. *Fleischhauer* [26 *App. Div.* 210] and *Kushes* v. *Ginsberg* [188 *N. Y.* 630]. Countless visitors of tenants and members of a tenant's family have encountered a like fate. If there is no remedy for the tenant, there is none for visitors or relatives present in the tenant's right." And also this: "The minority doctrine as to the liability of owners who have made a covenant to repair has won a notable adherent in the American Law Institute. The view is expressed by the institute in its restatement of the law of torts (section 227) that the covenant is equivalent to a reservation of occupation or control. There is frank concession, however, in the explanatory notes that in New York and elsewhere the law is settled to the contrary." I interpret the case of *Antonsen* v. *Bay Ridge Savings Bank*, recently decided by the New York Court of Appeals (292 *N. Y.* 143; 54 *N. E. Rep.* (2d) 338), as a recognition of the doctrine of retained control, discussed *supra*, but not as overruling *Cullings* v. *Goetz*, which it cites.

The rule that a stranger to the lease contract has no claim for damages against the owner prevails in England. *Cavalier* v. *Pope* (1906), *A. C.* 428. Therein Lord Atkinson added this with respect to the effect of a covenant to repair: "In *Miller* v. *Hancock* (viz.—1893—2 *Q. B.* 177, wherein the owner leased the different floors as separate tenements but retained possession and control of the staircase) and *Hargroves, Aronson & Co.* v. *Hartopp* (viz.—1905—1 *K. B.* 472, wherein the owner leased to the plaintiffs one of several floors but retained possession and control of the roof) the landlord was held liable because control was retained by him; but the power of control necessary to raise the duty, for a breach of which damages were recovered in the several cases to which we have been referred, implies something more than the right or liability to repair the premises. It implies the power and the right to admit people to the premises and to exclude people from them. But this power and this right belong to the tenant, not to the landlord, and the latter's

contract to repair cannot transfer them to him. The existence of such an agreement may entitle a landlord to demand from his tenant admission to the premises for the servants and workmen required to carry out his contract, but nothing in the shape of control." So, too, in Scotland. *Cameron v. Young* (1908), *A. C.* 176. See, also, *Salmond on the Law of Torts* (*9th ed.*) 131 (at *p.* 540).

As recently as 1937 it was said by the Supreme Court of Pennsylvania in *Harris* v. *Lewistown Trust Co.*, 191 *Atl. Rep.* 34: "The general rule in this country, and also in England, is that an agreement to repair does not impose upon the owner a liability in tort at the suit of the tenant or others lawfully on the land in the right of the tenant." In that decision the court, citing the illuminating article by Eldridge on "Landlord's Tort Liability for Disrepair," 84 *U. of Pa. Law Review* (1936) 467, overruled its earlier decision in *Deutsch* v. *Max*, 318 *Pa.* 450; 178 *Atl. Rep.* 481.

See also the statement of the rule, with citations, in 32 *Am. Jur.*, *Landlord and Tenant*, § 723, and the cases collated in 8 *A. L. R.* (at *pp.* 766, *et seq.*).

To summarize: The rule stated in *Clyne* v. *Helmes* is not an isolated or *obiter* expression; it is a live and thoroughly established precedent in the true sense of that word, a precedent that not only was built upon the existing law but has been repeatedly affirmed and fortified by this court, even very recently; the substance of the rule has the support of the predominant rulings in this country and also of the English courts; and the principle is thoroughly integrated with the general field of law. A principle so deeply rooted, long and recently supported, with ramifications that are not immediately discernible, ought not be overthrown. It involves property rights and duties set up in leases and other undertakings made in reliance thereon. I submit that the overruling of it would be contrary to sound policy. When the law on a subject has been clearly stated by the courts and long adhered to, people form their plans, make their engagements and enter upon their ventures in reliance thereon, rightfully and necessarily so. It is highly disturbing for the court suddenly to reverse its conception of the law, particularly when

that reversal relates to the rights and liabilities incident to property. The prevailing rule thereon has recently been deduced from the cases and stated thus in 21 *C. J. S., tit.* *"Courts,"* 396, § 216:

"Where judicial decisions may be fairly presumed to have entered into the business transactions of a country, and have become established as rules of property, it is the duty of the court, on the principle of *stare decisis,* to adhere to such decisions without regard to how it might be inclined to decide if the question were new, and they should not be disturbed except for the most cogent reasons. The rule that such final decisions will ordinarily be adhered to even when they are erroneous applies to decisions relating to real property with particular force."

The decisions of our own court fully sustain that position. "If the decision of a court of last resort is to be overturned by that body whenever its accuracy may be thought by the judges to be questionable, it is difficult to divine (in the language of the late Chief Justice Beasley, in *Graves* v. *State,* 16 *Vr.* 208) upon what stable basis the administration of the law is to be conducted." *Bowman* v. *Freeholders of Essex,* 73 *N. J. L.* 543, 547. "This court will not revise, much less overturn, a decision made by it, upon a matter which was directly presented for its determination, except upon the fullest conviction that it is erroneous. And it will not do so, even then, when the decision has been so long acquiesced in, and acted upon, that a return to the proper principle would disastrously affect existing interests." *State* v. *Taylor,* 68 *Id.* 276, 279. See, also. *McFadden* v. *Palmer,* 83 *N. J. Eq.* 621, 624.

In theory, the overruling of the line of cases headed by *Clyne* v. *Helmes* would be a change in the court's conception of the law; in effect, it would be a change in the *law,* applied retrospectively. If the principle has become outmoded, relief should be had by legislative action, not by judicial decision.

I am authorized by the Chancellor, by Justices Parker, Bodine. Porter and Colie, and by Judges Wells and Dear, to say that they concur in the foregoing memorandum.

HEHER, J. (For reversal.)   This is an action in tort for negligence by a tenant's servant against the landlord, for failure of performance of the latter's covenant to "maintain" the demised premises "in good repair and tenantable condition" during the term.

The premises were leased to the United States of America for a period of five years, commencing September 1st, 1933, for use as a post office station.   They consisted of a "certain room, 25' 3" x 71', providing approximately 1,792 square feet of floor space, net, on the first floor and a room on the second floor of the same dimensions,   *   *   *   with the joint use of a vacant space 10' wide between rear of building and adjoining building on Frazer Place, of the two story and cellar, frame, stucco and brick premises, situated on the northeast corner of Newark Avenue and Frazer Place," in Jersey City. Both floors of the building were covered by the demise.   A cellar in the front of the premises was not included therein. The lessor undertook to provide heat for the building from a plant in the cellar, to which access was had through a cellarway leading from Frazer Place.   There was an elevator in the rear of the building.   The pit extended but three feet below the first floor.

The plaintiff was employed by the government as superintendent of the building.   He was injured on May 11th, 1936, when the elevator fell to the bottom of the shaft while he was in the cage in the pursuit of his employment.   The trial judge granted a nonsuit on the ground that there was no "privity of estate or contract" between the parties, and therefore no right of action in plaintiff for defendant's negligence, if such there was.

It is the insistence of defendant (a) that there was no violation of a duty owed by it to plaintiff, and (b) that plaintiff "failed to prove that the elevator was in bad repair, that no inspection had been made, that the defendant had or should have had notice of any defect in the elevator, that the defendant was negligent, or that a lack of repair or a worn condition was the proximate cause of the falling of the elevator."

*First:*   There was tangible evidence of negligence.   The

landlord not only assumed the burden of maintaining the demised premises in good repair, but reserved the right of inspection for the purpose of discharging that obligation. The maintenance covenant provided thus: "For the purpose of so maintaining the premises, the Lessor reserves the right at reasonable times to enter and inspect the premises and to make any necessary repairs to the building." The proofs were sufficient to warrant the inference of a breach of the duty thus undertaken.

The elevator had two cables made of traction steel, attached to counter-weights; and its fall was occasioned by the breaking of a cable "at the weight." A witness testified that he found the elevator resting in the pit, and that the "cable was half way up to the roof; that is, the broken ends." He "noticed they [the cables] had broken away from the weight and the weight was down off the elevator at the bottom of the pit." These were half inch cables, called steel ropes. Each was composed of six strands, bound together, and each of the strands was constituted of nineteen smaller strands. The elevator was installed in October, 1931. The vendor serviced the instrument for the period of three months immediately following its installation. It was not again called upon to inspect or service the elevator until it dropped, when it made the necessary repairs at the instance of the landlord. There was no testimony as to whether the landlord had had the elevator inspected by others in the interim. The witness referred to examined the cables shortly after the elevator fell. He found that "a couple of strands * * * had been broken previously," and "the other one had a new break;" that "two or three of them had old breaks to them, and the other ones showed new metal, showing it was a new break;" that "the strands were apart and they were covered with grease and dirt, all black, showing it was an old break," while "the remaining strands were fresh, they showed a new, clean break." Some of the strands were "frayed; that is, the ends were unraveled and sticking out."

While negligence is not to be presumed, and therefore must be proven, it may, like any other fact, be inferred from the circumstances. The rule that such delinquency may be estab-

lished by circumstantial evidence is not to be confused with the doctrine of *res ipsa loquitur*. Under that maxim, negligence may, in the absence of an exculpatory explanation, be inferred from the bare occurrence itself, if the instrumentality was under the control and management of the defendant. It postulates culpability from the nature of the physical causes of the particular injury. It serves where there is an utter absence of evidence of fault, direct or circumstantial. Where the circumstances of their own force tend to show negligence, such an inference may be drawn without the aid of this doctrine. *Cleary* v. *Camden*, 118 *N. J. L.* 215; *affirmed,* 119 *Id.* 387.

Here, the proofs made out a *prima facie* case which called for a defense. The circumstances furnish grounds for a just and reasonable inference of a lack of due care in the discharge of the landlord's undertaking to maintain the elevator in a state of repair, and to make such inspection as was essential to the full performance of that duty. The evidence lends a substantial basis for the conclusion that either there was no inspection at all, or that it was inadequately or negligently made. The landlord is liable for failure of inspection if inspection would have revealed the fault which caused the injury. There is a logical and reasonable relation between the circumstances proved and the inference of a failure to exercise reasonable care in the discharge of the duty so assumed. The question of negligence is thus taken out of the realm of surmise and conjecture and placed within the field of legitimate inference from established facts.

The *onus probandi* does not oblige the plaintiff to do more than adduce evidence adequate to raise a fair and reasonable inference of negligence. In assaying the proofs, to determine whether or not a *prima facie* case has been made out, the standard of persuasion is "reasonable probability," *i. e.,* evidence in quality sufficient to generate belief that the tendered hypothesis is in all human likelihood the fact. Where, as here, circumstantial evidence is "uncertain," probability must needs be the touchstone by which it is measured. The claimed inference is just and reasonable, and therefore one upon which the law may proceed to judgment, if it is based

upon a preponderance of the probabilities according to the common experience of mankind. It must be a conclusion grounded in reason and logic. *Austin* v. *Pennsylvania Railroad Co.*, 82 *N. J. L.* 416; *Price* v. *New York Central Railroad Co.*, 92 *Id.* 429; *Donus* v. *Public Service Railway Co.*, 102 *Id.* 644; *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.*, 111 *Id.* 487; *Steskovitz* v. *West End Building and Loan Association*, 125 *Id.* 435; *Riker* v. *John Hancock Mutual Life Insurance Co.*, 129 *Id.* 508. The "reasonable probability of truth" is the norm laid down by Greenleaf. 1 *Greenleaf on Evidence*, § 13-a. In considering a presumption termed "one of the strongest and most persuasive known to the law," Cardozo, C. J., for the Court of Appeals of New York, said: "Issue will not be bastardized as the outcome of a choice between nicely balanced probabilities. They will not be held legitimate by a sacrifice of probabilities in a futile quest for certainty." *In re Findlay*, 253 *N. Y.* 1; 170 *N. E Rep.* 471. The inquiry is whether there is any evidence which, if accepted as verity and given its fullest probative force, fairly tends to sustain the pleaded cause of action. If the facts reasonably permit opposing conclusions by fairminded men as to whether or not there was negligence, there is an issue for the jury. *Sivak* v. *New Brunswick*, 122 *N. J. L.* 197. In the recent revision of his work on evidence, Professor Wigmore quotes from a treatise by Professor Trickett on the doctrine of preponderance of evidence: "There is no measure of the weight of evidence (unless the witnesses on the evidential facts are counted) other than the feeling of probability which it engenders." *Wigmore on Evidence (3d ed.)*, § 2498.

Here, it is an inescapable inference that the collapse of the cables was due to deterioration from wear and tear. It would seem to be almost a matter of common knowledge that evidences of this radical deterioration would have been perceivable on examination long before the final severance, certainly so on expert inspection. But there was affirmative evidence that some of the strands gave indication of old fractures. This suffices to make out a *prima facie* case, *i. e.*, one that calls for an explanation. This is not a case of drawing

an inference of negligence from the occurrence itself, without more. The evidence adverted to makes it fairly and reasonably deducible (assuredly so, in the absence of an explanation) that, if the duty of inspection had been adequately discharged, the frail and dangerous condition of the cables would have been revealed. Indeed, this duty of inspection was an exacting one, *i. e.*, such as was commensurate with the risk, for the consequence of disrepair would be a highly dangerous instrumentality.

Negligence may be established by proof of circumstances in all cases. Ordinarily, "it is not the injury, but the manner and circumstances of the injury," that justify the conclusion of negligence; and, where the defendant "has knowledge of a fact, but slight evidence is requisite to shift on him the burden of explanation," and therefore, in proper cases, the jury may be permitted to infer negligence from the accident and the attending circumstances in the absence of an explanation. These are general rules, applicable wherever issues of fact are to be determined. *Griffen* v. *Manice,* 166 *N. Y.* 188; 59 *N. E. Rep.* 925; *Goldstein* v. *Pullman Co.,* 220 *N. Y.* 549; 116 *N. E. Rep.* 376.

In *Battschinger* v. *Robinson,* 83 *N. J. L.* 739, the plaintiff suffered injury from the fall of a dumb-waiter. Liability was predicated on the theory that, for want of "proper inspection," the supporting rope was "suffered to get into disrepair," and the instrument thereby became unfit for the use of the tenants. This court ruled that the inspection "must be ample and carefully and properly made." The trial judge overruled a request to charge that it was incumbent on the plaintiff to prove failure of inspection, and that such inspection, if made, would have disclosed the "frayed condition of the rope." In sustaining the ruling, this court said: "This request limited the defendant's negligence to the frayed condition of the rope, and left out of consideration any other elements of deterioration resulting from lack of proper inspection and repair which may have caused or contributed to cause the damage, and it therefore imposed too narrow a theory of liability upon the landlord, and was properly refused." In the case at hand, it was for the jury to say

whether, if the landlord had exercised due diligence, it would have been apprised of the need of repairs. *Frank* v. *Conradi,* 50 *Id.* 23. That it did not do so is a rational deduction in the circumstances. A casual inspection will not do; it must be as "thorough" as reasonable care demands. Negligence is predicable on a failure of inspection, or knowledge of the defect, actual or constructive. *Timlan* v. *Dilworth,* 76 *Id.* 568. Reasonable care to maintain the elevator in a reasonably safe condition is the standard of duty. *Saunders* v. *Smith Realty Co.,* 84 *Id.* 276. See, also, *Zappala* v. *Stanley Company of America,* 124 *Id.* 569.

*Second:* And the landlord's liability did not depend upon notice of the need of the particular repairs. It was not so conditioned. The contract was not merely to repair the cables after they had broken, and the elevator had fallen, but to "maintain" the elevator in "good repair"—in other words, to use reasonable care to maintain the instrumentality in a reasonably safe condition, *i. e.,* such care as was commensurate with the risk. The maintenance of the elevator in a reasonably safe operating condition was a constant responsibility of the landlord's, deliberately undertaken by the covenant in question. Adequate cables were vital to safety in operation; and the duty laid upon the landlord was to take all measures fairly necessary to serve that primary end.

It was certainly within the contemplation of the parties to the lease that deterioration of the cables through wear and tear would eventually result in the fall of the elevator without forewarning, and that injury would in all likelihood ensue to the persons who might then be using it. An elevator whose cables are in such a state of decay is a nuisance fraught with the gravest consequences to life and limb. Obviously, this hazard was preventable only by the exercise of reasonable care in the inspection of the instrumentality; and, as between the landlord and tenant, the maintenance of the elevator in a reasonably safe condition, and the concomitant duty of inspection essential to the performance of that obligation, were laid exclusively on the landlord by the contract. The principle of notice of the need of repairs as a *sine qua non* to liability is inapplicable in such circumstances.

The instant case is infinitely stronger for the application of this principle · than the case of *Monohan* v. *Baime*, 125 *N. J. L.* 280, for there the landlord did not reserve qualified possession of the premises, *i. e.*, a right of inspection to permit of the fulfilment of the obligation to maintain the premises in a good state of repair. The rationale of that decision is that, by virtue of a bare covenant to repair the heating plant, "the control of the heating plant, including · the radiator, remained" in the landlords, "thus placing upon them a duty of exercising reasonable care to keep and maintain the same in a manner not to bring harm or injury to those by lawful right, such as respondent, making use of the premises."

Considering the terms of the covenant here in the light of the circumstances, the nature of the instrumentality, and the consequences of a lapse from a vital state of repair, the conclusion is unavoidable that the parties did not deem notice a prerequisite as respects the elevator.

The rationale of the doctrine of notice is that the tenant has the special knowledge that comes from possession of the lands, coupled with the landlord's ignorance through lack of access to the premises. *Torrens* v. *Walker* (1906), 2 *Ch.* 166; 3 *B. R. C.* 343; *Murphy* v. *Hurly* (1922), 1 *A. C.* 369; 11 *B. R. C.* 524. Here, as stated, there was a reservation of the right of entry for inspection and repairs; and there was, therefore, joint control of the elevator, limited so far as the landlord was concerned to the performance of the duty of repair thus undertaken. ·The condition of the elevator could not be known to the tenant unless it caused periodic inspections to be made; and the contract laid the duty of inspection on the landlord. The particular defect was discoverable only by examination. While the parties may make an agreement binding the landlord to repair only on notice, they are at liberty also to provide for the keeping of the premises in a safe condition on the landlord's own responsibility, and without reference to notice from the tenant of the defective condition, and to reserve to the landlord the constant possession of the premises necessary for that purpose. *Miles* v. *Janvrin*, 196 *Mass.* 431; 82 *N. E. Rep.* 708; *Id.*, 200 *Mass.* 514; 86 *N. E. Rep.* 786; *Crowe* v. *Bixby*, 237 *Mass.*

249; 129 *N. E. Rep.* 433. In the last cited case, as here, the defect was due to wear and tear and the elements, which "made its use increasingly dangerous with the lapse of time— a condition which could readily have been discovered upon examination." See, also, *Barron* v. *Liedloff*, 95 *Minn.* 474; 104 *N. W. Rep.* 289.

The principle was given application by Chief Justice Beasley in the early case of *Gerzebek* v. *Lord and Redmond*, 33 *N. J. L.* 240. There, the agreement was that the landlord should, during the term, "repair the water pipes and water closets, walls, and do all other necessary repairs to make the property in a good and tenantable condition." The Chief Justice said: "It is obvious that this is not a stipulation to keep the premises in repair. The term '*make* the property in a good and tenantable condition,' is equivalent to an agreement, to *put* them in that state. Such a covenant would be satisfied by a single performance. So a refusal on a single occasion to perform would be an entire breach. * * *. It becomes necessary, therefore, to decide when a breach will occur. The lessor is to put the premises in repair 'during the term;' but when during the term? For an answer to this inquiry, we must look at the nature of the contract. From the character of the transaction and the position of the parties, I think it was the evident intention that this act of the landlord was to be done upon notice on the part of the tenant. This construction is the most beneficial to the lessee, and the contract is to be taken most strongly against the covenantor. It is not to be presumed that the landlord was to have the right at any time to force an entrance upon the occupation of the tenant with a view to making reparations. Such a power could only be justly claimed by virtue of an express reservation to that effect. Besides, in this case how was the lessor to know that the water pipes or other parts of the premises were out of repair? There is no provision that he may enter and view the property, and for him to do so would have been a trespass. This is not a case where each of the contracting parties has equal facilities of information. The rule is that notice to perform is necessary whenever the fact, on the occurrence of which the right to claim perform-

ance depends, lies more peculiarly within the knowledge of one of the parties than the other. *Chit. on Cont.* 732. With reference to the state of these demised premises, the tenant possessed the advantage of position, and he was, consequently, bound, if he wished them repaired, to request performance of the covenant in question."

And there are cases holding that this qualified possession and control are implied where the covenant is to keep and maintain the premises in good repair. In such circumstances, if the landlord knew, or by the exercise of due diligence ought to have known, of the defective condition of the premises, he is liable. 36 *C. J.* 221. See, also, *Barron* v. *Liedloff*, *supra*.

The principle of limited possession and control is exemplified in the case of *Broame* v. *New Jersey Conference*, 83 *N. J. L.* 621.

We need not decide whether notice is necessary to fix the landlord's liability in the case of ordinary repairs. Here, the nature of the instrumentality, and the hazards of disrepair, render it clear that the parties designed that the obligation was the landlord's without notice. The general principle of notice is not applicable to the facts of this case. The covenant, in this respect, cannot be read as one to repair on notice. In *Vyse* v. *Wakefield* (1840), 6 *M. & W.* 442, 452, Lord Abinger enunciated this principle: "Where a party stipulates to do a certain thing in a certain specific event which may become known to him, or with which he can make himself acquainted, he is not entitled to any notice, unless he stipulates for it; but when it is to do a thing which lies within the peculiar knowledge of the opposite party, then notice ought to be given him." This is a general principle that governs here. It is not reasonable in the special circumstances to imply the condition of notice. Notice is only required where it would be unjust to hold the defendant liable without it. *Makin* v. *Watkinson* (1870), *L. R.* 6 *Ex.* 25. In the case of *Murphy* v. *Hurly, supra,* Lord Buckmaster, for the House of Lords, said: "The principle upon which notice is required to be given to a lessor requiring him to repair demised premises in accordance with his covenant

before proceedings are taken to obtain damages for the breach is not inherent in the relationship between landlord and tenant. The doctrine depends upon the actual facts existing in each case and upon the consideration whether the circumstances are such that knowledge of what may be required to be done to comply with the covenant cannot reasonably be supposed to be possessed by the one party while it is by the other. If these are the conditions, it is so unreasonable to render the ignorant party liable for something which the party with knowledge has never asked him to do that it is assumed the covenant implies a condition as to notice being precedent to liability. * * * There are a number of authorities that have followed this principle [notice as a *sine qua non*], but there are none that affect the central underlying idea that justice requires in a covenant to repair an implication that knowledge possessed by one party, and which in the position of the parties would not be possessed by the other, must be communicated before proceedings can be taken for breach of the covenant." It was held that there were no circumstances that rendered it "necessary to imply conditions which have never been expressed and the covenant to keep in repair must be enforced without regard to any special limitations on *its* operation." See, also, *Griffin* v. *Pillet* (1926), 1 *K. B.* 17; 15 *B. R. C.* 270. The cases *contra* are in the main those where the landlord had no right of entry to inspect and repair. See Lord Atkinson's concurring opinion in the last cited case. This doctrine was applied in *Hayden* v. *Bradley,* 6 *Gray* 425. It was there held that the landlord, by a reservation of the right of entry for inspection, "having provided for himself the means of ascertaining the contingency upon which he was to make repairs, was not entitled to notice from the plaintiff that the contingency had happened." Under such a covenant, the landlord's "duty was that of care, and ignorance of the defect was no defense." *Lindsey* v. *Leighton,* 150 *Mass.* 285; 22 *N. E. Rep.* 901; *Olson* v. *Schultz,* 67 *Minn.* 494; 70 *N. W. Rep.* 779.

*Third:* As to the landlord's liability to the tenant's employee: It has been the general rule that a landlord is not, by reason of a covenant to repair or keep in repair the demised

premises, liable either in tort or contract to the tenant and those in privity with him for injury resulting from defects in the demised premises. This on the hypothesis that the remedy is *ex contractu* and such damages were not within the contemplation of the parties as the probable result of the breach, or were too remote. *William* v. *Fenster,* 103 *N. J. L.* 566; *Busick* v. *Home Owners Loan Corp.,* 91 *N. H.* 257; 18 *Atl. Rep.* (*2d*) 190; *Thomas* v. *Lane,* 221 *Mass.* 447; 109 *N. E. Rep.* 363; *Cavalier* v. *Pope* (1905), 2 *K. B.* 757; same case on appeal, (1906), *A. C.* 428; 36 *C. J.* 208; 32 *Am. Jur.* 597, 599. But that rule does not obtain in this state. It has long been settled doctrine here that such damages are recoverable by the tenant in an action in case, on the theory that, while the contract gives rise to and measures the duty, its breach is tortious and remediable as such. A negligent breach or non-performance of the duty is actionable if damage ensues as the natural and proximate result thereof. *LaBrasca* v. *Hinchman,* 81 *N. J. L.* 367; *Bolitho* v. *Mintz,* 106 *Id.* 449; *Rosenberg* v. *Krinick,* 116 *Id.* 597; *Folley* v. *United Building and Loan Association,* 117 *Id.* 54; *Harenburg* v. *August,* 119 *Id.* 83; *Granato* v. *Howard Savings Institution,* 120 *Id.* 94; *Maday* v. *New Jersey Title Guarantee and Trust Co.,* 127 *Id.* 426; *modified,* 129 *Id.* 53; *Watkins* v. *Feinberg,* 128 *Id.* 79; *affirmed,* 129 *Id.* 386. See, also, *Frank* v. *Conradi, supra.* Mere non-performance, as well as negligent performance, in essence is tortious and not contractual. Liability rests not upon the contract, but on a tortious failure of a legal duty. The duty in such circumstances is a "positive" one imposed "by act of the parties;" and its negligent omission is remediable by an action *ex delicto.* *Vide Hussey* v. *Long Dock Railroad Co.,* 100 *Id.* 380. Liability in tort is predicable upon non-feasance. *Vollkommer* v. *Menge,* 116 *Id.* 82. Here, the maintenance of the elevator in a reasonably safe condition was the measure of care assumed by the landlord; and the qualified control for inspection and repairs put it within the power of the landlord to discharge the obligation. Liability in tort is grounded in the landlord's right and duty to enter the premises and to exercise there a measure of control. *Keegan* v. *G. Heileman*

*Brewing Co.,* 129 *Minn.* 496; 152 *N. W. Rep.* 877. A breach of the duty thus raised takes the category of an actionable tort, if thereby the tenant was subjected to an unreasonable hazard, and damage ensues. Failure to exercise ordinary care to maintain the elevator in a reasonably safe condition would constitute the omission of a legal duty which arose out of the relationship between the parties. Compare *Wendell* v. *Pennsylvania Railroad Co.,* 57 *N. J. L.* 467.

This legal philosophy finds expression in the *Restatement of the Law of Torts. Section* 357 declares the sound rule to be that the landlord is liable for bodily harm caused to the lessee and "others upon the land with the consent of the lessee, or his sub-lessee," by a condition of disrepair existing before or arising after the lessee has taken possession, if "(a) the lessor, as such, has agreed by a covenant in the lease or otherwise, to keep the land in repair, and (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented." Liability, it is said in the subjoined comment, is founded on "a tort duty based on the fact that the contract gives the lessor ability to make the repairs and control over them." In this view, a covenant to a repair is deemed the equivalent of a reservation of occupation or control—certainly so, when there is an express reservation of the right of entry and inspection.

And it is a corollary of these considerations that this tort liability of the landlord to the tenant for the breach of a covenant to repair, eventuating in personal injuries, extends also to the members of the tenant's family and his guests and invitees, and likewise to his employees and invitees, if he uses the demised premises for business or kindred purposes. The duty is owing to all those who in the contemplation of the parties were to use the premises in the exercise of the tenant's rights under the hiring—such as the landlord naturally apprehended would enter the lands in the right of the tenant. Persons in privity with the tenant have the same rights and remedies in this regard as the tenant would have, but no more. Their rights are of necessity measured by those of the tenant.

This principle needs no formal legislative sanction for sustenance. It was given recognition in *Hussey* v. *Long Dock Railroad Co., supra.* It is but a reiteration of what is implicit in the cases in this state which have long since established the landlord's liability to the tenant in tort for personal injuries flowing from a negligent breach of his covenant to repair. The holding of *Clyne* v. *Helmes, 61 N. J. L.* 358, that this responsibility did not extend to those on the lands in the tenant's right was first impliedly overruled by the adoption of the principle of these cases. And lately came the case of *Monohan* v. *Baime, supra,* wherein a recovery by a tenant's servant was sustained by this court. The rule of liability to the tenant in such circumstances is irreconcilably in conflict with the doctrine of non-liability to persons in privity with the tenant, for, as we have seen, liability to the tenant is rested upon default in the performance of a positive duty that, by its very nature, is due to all persons who the landlord had reason to apprehend would come upon the lands at the tenant's invitation. If we reaffirm the rule of Clyne *v.* Helmes, then we are perforce obliged to overrule the line of cases rendering the landlord liable to the tenant for such an injury in an action *ex delicto.* The two cannot stand together. They are incompatible in principle. The cases of *Cullings* v. *Goetz, 256 N. Y.* 287; *176 N. E. Rep.* 397, and *Harris* v. *Lewistown Trust Co., 326 Pa.* 145; *191 Atl. Rep.* 34, and the cited English case of *Cavalier v. Pope,* all deny the landlord's liability in tort at the suit of the lessee or tenant as well. Indeed, in most if not all of the cases in this category the point made was that, notwithstanding that the tenant was remediless as regards personal injuries attributable to a default in making covenanted repairs, yet the landlord was under a duty to those who entered the lands under the tenant's title and liable in tort for its breach; and the contention was rejected on the ground that the tenant and those in privity with him have an identical status and are on the same footing in this respect. The rationale of these decisions is that the remedy for a breach of a covenant to repair is *ex contractu* only, and that damages for personal injuries are not recoverable therein. To hold that in such circumstances the tenant has an action in tort and his privies

have not would be utterly lacking in reason and logic. As noted, liability in tort is predicated on a negligent breach of duty that on principle cannot be considered as owing to the one but not the other. The one is a concomitant of the other, based upon the common duty to the tenant and those in privity with him that arises out of the unreasonable risk consequent upon the state of disrepair. Negligence is the gravamen of the action. An unreasonable hazard to the lawful user of the land is an indispensable element. The doctrine of the landlord's tort liability to the tenant is embedded in our jurisprudence; and we deem it to be soundly based. Quite recently, it was accorded the unanimous approval of this court. *Maday* v. *New Jersey Title Guarantee and Trust Co., supra.* We have not given adherence to the English doctrine, followed in New York and Pennsylvania, that "the power of control necessary to raise the duty * * * implies the power and the right to admit people to the premises and to exclude people from them." This distinction would seem to be arbitrary. Liability in tort is incident to occupation or control. Control ample to maintain the premises in "good repair and tenantable condition" is sufficient to found a liability in tort for breach of a duty so to do. Such is implicit in the course of decision in this state.

I cannot conceive of a valid reason why injury to a person in privity with the tenant should not be actionable *ex delicto,* if the tenant has such right of action. Quite apart from other considerations of reason and logic, such a doctrine would interfere unduly with the user of the leased lands. Here, the law contemplates that the contract was made to secure a reasonable measure of safety in the condition of the premises for the transaction of the government's business. The landlord well knew that worn and fragile cables would create an unreasonable hazard to the tenant's employees and invitees. It was aware that failure of performance of the obligation of maintenance would eventually give rise to an extremely dangerous instrumentality that would gravely peril the safety of the users of the lands; and it was plainly within the contemplation of the parties that both the tenant and his invitees should receive the like protection. The duty, by its very nature, is a common one. The tenant is under the lia-

bility of an occupant of lands to his invitees; and in such circumstances he relies for the fulfilment of the duty on the landlord's performance of the assumed duty of repair. *Vide Van Winkle* v. *American Steam Boiler Co., 52 N. J. L.* 240.

This principle is accepted without dissent by those jurisdictions which consider the landlord's default in this regard an actionable tort. 38 *C. J.* 224, 227, 229.

We have not been cited to any case which affirms the right of the tenant to sue in case for negligence for breach of a duty to repair and denies such right to those in privity with him. The conflict in our own decisions is manifestly a subject for judicial correction. It is not requisite that there be legislative action to secure consistency of principle. There has been no legislative dissent from our holdings that the landlord is under a tort liability to the tenant in such circumstances; and this implied acquiescence warrants, indeed demands, that the consequences of a violation of such a duty be redressable—*ex delicto* at the suit of the tenant's privies as well. Legislation was not essential to establish the landlord's responsibility as respects common hallways, stairways and approaches in houses occupied by more than one tenant. Liability there is based upon control and invitation. Here, such control was reserved in the contract itself; and the consequent duty is the same. The control thus retained to fulfill the assumed duty of repair is the ground of the liability in tort.

Ordinarily, the policy inherent in the doctrine of *stare decisis* is not served by the perpetuation of error. It is grounded in a reasonable respect for precedent. Generally, there is no virtue in slavish adherence to precedent contrary to sound principle. Considerations of reason and justice should prevail against precedent, unless there are cogent grounds for adherence—*e. g.,* where there is involved a rule of property, in reliance upon which titles have been acquired, or vested rights will be disturbed by the change. It is ofttimes a choice of relative evils. *Vide Cooley's Constitutional Limitations* (*8th ed.*) 120.

There is a basic inconsistency in holding that, while the tenant may recover such damages in case for non-performance of the landlord's covenant to repair, those who enter the lands

under his title have not such right of action. This liability of the landlord to his tenant presupposes a tortious breach of duty independent of the contract itself, for, as we have seen, damages for personal injuries in such circumstances are not recoverable in an action *ex contractu,* since they were not within the contemplation of the parties as the likely result of the breach. Mere non-performance of what is essentially a contractual undertaking will not sustain an action sounding in tort. It is remediable only by an action *ex contractu.* There is a choice of remedies only where a negligent breach of contract is also a violation of a duty raised by the law. Compare *Ashmore v. Pennsylvania Steam Towing Transportation Co.,* 28 *N. J. L.* 180; *Marvin Safe Co.* v. *Ward,* 46 *Id.* 19; *Styles* v. *Long Co.,* 67 *Id.* 413; *Gumaerd Lead and Zinc Co.* v. *Erie Railroad Co.,* 92 *Id.* 216; *Atlantic and Pacific Railroad Co.* v. *Laird,* 164 *U. S.* 393; 17 *S. Ct.* 120; 41 *L. Ed.* 485. See, also, 1 *C. J. S.* 1112, 1122; 1 *Am. Jur.* 441.

Liability to the tenant in case for negligence in such circumstances rests upon a breach of a duty which the law annexes to the relation created by the parties themselves, grounded in the landlord's reserved control of the demised premises and his ability to make the stipulated repairs, and the fact that the disrepair subjected the tenant to a hazard that was unreasonable. The duty of repair in its genesis is conventional; but, if its breach constitutes an unreasonable risk of harm to the tenant and those who come upon the lands at his invitation, the law imposes the duty of due care. There is in such circumstances an interest which the law protects. It is the general rule that if, by one's conduct, another is exposed to an unreasonable risk of injury—such as is within the realm of reasonable prevision—there is a violation of duty under the law, and therefore negligence, actionable if injury results. If there be such hazard, the act is negligent regardless of whether it is also a breach of a subsisting contract. It suffices if there be a relation between the parties which gives rise to the duty of reasonable care for the other's safety. The view that the tenant's invitees have no right of action for mere non-performance of a covenant to repair proceeds on the hypothesis that the duty is purely contractual.

But, if that concept were valid, the tenant would on well-settled principles have no right of action in case. We must either give the principle its full natural sweep or overrule it in its entirety. Arbitrary distinctions are inadmissible.

I therefore hold the opinion that, to the extent that it is inconsistent with the principles herein applied, the case of *Clyne* v. *Helmes, supra,* should be overruled.

For interesting discussions of the principles governing exceptions to the general rule that a stranger to a contract may not maintain an action *ex delicto* for injuries ensuing from a breach, see *MacPherson* v. *Buick Motor Co.,* 217 *N. Y.* 382; 111 *N. E. Rep.* 1050; *Kahner* v. *Otis Elevator Co.,* 89 *N. Y. Supp.* 185; *affirmed,* 183 *N. Y.* 512; *Dahms* v. *General Elevator Co.,* 214 *Cal.* 733; 7 *Pac. Rep.* (2d) 1013.

Since the foregoing was written, the Court of Appeals of New York has sustained the tenant's right of recovery for injuries resulting from the fall of a portion of the ceiling of the kitchen of an apartment in a two-family house possessed under a contract for a month-to-month tenancy, whereby the landlord "agreed to make repairs as they became necessary," on the theory that thereby the landlord had "reserved control of the premises to the extent of permitting it to make repairs," and thus had retained "one of the privileges of ownership." *Antonsen* v. *Bay Ridge Savings Bank,* 292 *N. Y.* 143; 54 *N. E. Rep.* (2d) 338.

It was conceded that the rights of the parties were governed by the common law. The case was submitted to the jury on the theory of a nuisance maintained by the landlord rather than its negligence. There was evidence that "several days after the accident the defendant's agent came to the plaintiffs' apartment and installed in the kitchen a new tin ceiling in place of the plaster ceiling which had fallen * * *." The jury found for the plaintiffs; but the Appellate Division reversed the judgment on the ground that, under the common law, there was "no cause of action * * * on any theory." 266 *App. Div.* 164; 41 *N. Y. Supp.* (2d) 628. In holding that the submission of the case on the nuisance theory was not prejudicial to the defendant, the Court of Appeals said: "Despite the possible misnomer the basis

of defendant's liability was the same. * * * That basis in this instance was the evidence to which reference has been made from which the jury could have found that the possession and dominion of the premises demised by the defendant to the plaintiffs was not exclusive and complete but reserved to the defendant such a measure of control as permitted it to make necessary repairs. 'The duty to keep a building or part of it in repair is co-extensive with the control retained by the landlord.' (*Zolezzi* v. *Bruce-Brown*, 243 N. Y. 490, 497.)"

This would seem to be a radical modification of the principle applied in *Cullings* v. *Goetz, supra,* for there Cardozo, C. J., held that "occupation and control are not reserved through an agreement that the landlord will repair." He continued: "The tenant and no one else may keep visitors away till the danger is abated, or adapt the warning to the need. The landlord has at most a privilege to enter for the doing of the work, and at times not even that if the occupant protests. 'The power of control necessary to raise the duty * * * implies something more than the right or liability to repair the premises. It implies the power and the right to admit people to the premises and to exclude people from them.' *Cavalier* v. *Pope* (1906), *A. C.* 428. In saying this we assume the possibility of so phrasing and enlarging the rights of the lessor that occupation and control will be shared with the lessee."

And it goes without saying that in such circumstances the common law duty extends as well to the persons upon the premises in the right of the tenant.

I vote to reverse the judgment.

Mr. Chief Justice Brogan, Mr. Justice Donges, Mr. Justice Perskie, Judge Rafferty, Judge Hague, Judge Thompson and Judge Dill join in this opinion.

*For affirmance*—THE CHANCELLOR, PARKER, CASE, BODINE, PORTER. COLIE, DEAR, WELLS, JJ. 8.

*For reversal*—THE CHIEF JUSTICE, DONGES, HEHER, PERSKIE, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 8.